Paul, &c., v. Smith, &c.

---

CASE 73—JUDGMENT, JURISDICTION—JANUARY 31, 1885.

## Paul, &c., v. Smith, &c.

### APPEAL FROM HENRY CIRCUIT COURT.

1. Where a judgment is offered in evidence collaterally in another suit, the validity of that judgment can not be questioned except upon the ground of want of jurisdiction in the court that rendered it.
2. Although the petition upon which an attachment was issued be technically defective, yet, inasmuch as the party defendant was constructively served by statutory warning order, as a non-resident, and the

Paul, &c., v. Smith, &c.

writ of attachment was properly levied, the court had jurisdiction... The judgment was not void, but only voidable, and the purchaser at the sale, under the attachment, obtained a valid title.

3. In this case, the provisions of the Civil Code in regard to constructive service were fully complied with.

A. DUVALL for appellants.

1. The three attaching creditors of Paul utterly failed to comply with material and substantial requirements of the law. The court had no jurisdiction.

2. It has time and again been held that the remedy by attachment is a harsh one, and every provision of the law must be implicitly complied with. The result is that the circuit court had no jurisdiction, and no power to adjudge the sale of Paul's land. (Bell, Berkley & Co. v. Hall, 2 Duvall, 288; Brunfield v. Dyer, 7 Bush, 507; Grigsby v. Barr,. 14 Bush, 351; Drake on Attachments, section 876; Civil Code, sections 83 to 95; Ib., sections 436, 437; Drake on Attachments, 95, 97, 98; 38 Cal., 203; Waples on Attachments, 94; 3 Met., 278.)

3. The summons and attachment in Bobbitt's case issued February 1, 1862. The petition was filed the second of the same month. (Hall & Head v. Grogan, 78 Ky., 11.)

4. A judgment is an entirety, and if bad as to part, is bad as to all. (Harine v. Wood, Sneed, 235; Murphy v. O'Riley, 78 Ky., 263; Owsley v. Cook. MS. opinion, April, 1867; 3 Met., 278; 4 Bush, 571; 1 Met., 489; 3 Dana, 579; 13 Barbour, 412; Thompson's Prov. Remedies, 379; 17 B. Mon., 426.)

GEORGE C. DRANE for appellees.

1. The sufficiency of the affidavit upon which the attachment issues does not present the question of jurisdiction, and, therefore, in a collateral matter, the proceeding can not be reviewed and set aside.

2. Appellants concede that they can only prevail in this litigation upon the sole ground that the judgment of the Henry Circuit Court, in the case of Hughes, &c., v. Paul, is void.

3. If the affidavit were amendable, the order of attachment was not void, but voidable merely, and could only be avoided by a direct proceeding for the purpose, or by appeal.

4. In Allen v. Brown, 4 Met., 342, this court, in reviewing Pool v. Webster, 3 Met., 278 overrules that decision, and holds that the affidavit. for the attachment may be amended, and further says that "the jurisdiction of the court depends upon the actual or constructive service of process on the defendant, and not upon the plaintiff's affidavit or the clerk's order."

5. The case of Hall & Head v. Grogan is by no means analogous to this. (Thompson's Prov. Rem., pages 379, 340; 13 Howard, N. Y., 349; 13 Barbour, N. Y., 412; 7 Birbour, 412; Allen v. Brown, 4 Met., 342;.

Paul, &c., v. Smith, &c.

Bailey v. Beadles, 7 Bush, 383; Burchett v. Burchett, 5 Ky. Law Rep., 314; Brownfield v. Dyer, 7 Bush, 537; Drake on Attachments, section 189.)

.JUDGE HOLT DELIVERED THE OPINION OF THE COURT..

The defense of the appellees to this action of ejectment by the appellants, as the heirs of F. H. Paul, is that the land was attached for his debts, and purchased by the party through whom they claim title, at a decre.tal sale; and it being assailed collaterally, the only ·question to be determined is whether it was void.

By section 2, of an act of the Legislature of Ken·tucky, passed December 23, 1861, and entitled "An act, to amend the Code of Practice in civil cases," an addi·tional ground of attachment was provided in these words: "That he or they have voluntarily left the county of his or their residence; have been absent :therefrom for thirty days, and during said period of ·time have been, and continued voluntarily, within the ·so-called Confederate States or their military lines." ·(Myer's Supplement, page 38.)

· On January 4, 1862, A. P. and William Hughes :brought each an action for debt in the Henry Circuit ·Court against F. H. Paul, and on February 1, 1862, F. H. Bobbitt did the same. Attachments were sued out in each case, upon the ground above stated, and levied upon the land in contest; also a warning order was made in each case, and a report filed by the duly appointed corresponding attorney.·

Proper attachment bonds were executed, as well as the required bonds to the non-resident defendant; .and the actions, after consolidation, having proceeded ·to a judgment, the attached property was sold there-

under, and purchased by the two plaintiffs, the Hughes, and then by their order conveyed by the court's commissioner to their sister, who was the wife of F. H. Paul and the mother of the appellants, and through whom the appellees claim title.

The success or defeat of the appellants, in this action, depends upon whether the Henry Circuit Court had jurisdiction to render said judgment; because it may now be regarded as a legal maxim, that when a judgment is offered in evidence collaterally in another suit, its validity can not be questioned, except for want of jurisdiction in the court that rendered it.

In the two suits first above named, the ground for the attachment was thus stated: "Said F. H. Paul has voluntarily left the county of his residence; has been absent therefrom for thirty days, and during said period of time has been, and continued voluntarily, within the so-called Confederate States or their military lines;" while in the Bobbitt case it is as follows: "Said F. H. Paul has voluntarily left Henry county and State aforesaid, the county of his residence; has been absent therefrom for thirty days; and during that period of time has been, and continued, in the so-called Confederate States or their military lines."

It is urged that the jurisdiction of the court depended upon the grounds for the attachments being properly stated, and that in the two cases first named it was not alleged that the defendant, F. H. Paul, was, when he left the county of his residence, a resident of Kentucky; while in the last one, the word "*voluntarily*," as used in the statute, was omitted from the statement relating to the defendant having remained within the Confederate States or their military lines.

This court has heretofore held said statute to be valid, and it was, of course, intended to relate only to residents of Kentucky ; its language was used in setting forth the ground of attachment in the two first-named cases ; and it is said in Drake on Attachment, section 98, that no more is required.

A substantial compliance is certainly sufficient. If, by fair inference, the scope and sense of the law have been fulfilled, a technical objection, which does not reach to the substance, will not avail, even if a statute in derogation of the common law be in question.

Where a statute authorized an attachment upon the ground that the defendant "resides *out of the State*," an affidavit stating that "he is a non-resident" was held sufficient, although it failed to state whether the alleged non-residence related to the county, district or State.

In this instance the action was brought in this State, and under a statute which related to residents of this State alone. The petition alleged that the defendant had "*voluntarily left the county of his residence*," and this, upon such a state of facts, should, in our opinion, be held to mean that he had left the county of his residence in Kentucky, and we are therefore of the opinion that the ground of attachment in said two cases was sufficiently stated.

But granting that the omissions, in stating the grounds of attachment, were irregularities of such a character that they would have authorized a reversal of the judgment upon a direct appeal from it, yet did they render it void, so that it can be questioned collaterally ? or, more broadly stated, did the jurisdiction of the court

depend upon the sufficiency of the statement of the grounds of attachment, or was it acquired by the constructive service of the summons upon the defendant, by means of the warning order and the levy of the attachment upon the property, and the return thereof?

The work above cited, of Mr. Drake, seems to hold that the proper statement of the grounds of attachment confer it; but he bases his opinion mainly upon some Tennessee and New York cases; and, upon an examination of the latter, we find that they arose under a statute by which the attachment was the original process; that the affidavit upon which it issued was not amendable; and that it was issued by a mere officer out of court, whose power was limited and derived solely from the statute.

In such a case the sufficiency of the affidavit might well be held to be a jurisdictional question. Under the present Code of New York, however, the attachment is, as under our practice, a mere provisional remedy, and not the commencement of the action; and it has been repeatedly decided by the courts of that State, since the adoption of its Code, that the jurisdiction does not depend upon the proper statement of the grounds of attachment. (In the matter of Griswold, 13 Barbour, 412; Thompson on Prov. Remedies, page 379.)

By section 39, of our Civil Code, an action is commenced by filing a petition, and causing a summons to be issued or a warning order to be made; and when once properly commenced, the jurisdiction of the court to proceed is acquired; and it is difficult to see why the statement of the grounds for a mere provisional

remedy should control the jurisdiction, when the granting of an attachment and its levy, merely, would not authorize the court to proceed and render a judgment.

The jurisdiction of the person arises from the actual or constructive service of process, while the writ of attachment draws the property within the court's power, and a lien is created upon the property of one constructively summoned by the levy of the attachment. (Myers' Code, section 449 ; Act of December 23, 1861, section 13 ; Myers' Sup., page 38.)

In Cooper v. Reynolds, 10 Wall., 308, the Supreme Court of the United States, in a case arising under the laws of Tennessee, held that a defective affidavit for an attachment might be ground for a reversal of the judgment, but did not render it void ; and the decisions of this court are in accord with this doctrine.

In the case of Allen v. Brown, 4 Met., 342, the court uses this language :

"The Code does not declare that the clerk's order of attachment shall be void unless the requisite affidavit is filed, nor that the jurisdiction of the court is to depend on the filing of such affidavit. The case seems to be within the general rule, that the proceedings of a court, having jurisdiction of the person or subject, are not void, however erroneous they may be. The jurisdiction of the court in attachment cases depends upon the actual or constructive service of process upon the defendant, *and not upon the plaintiff's affidavit, nor upon the clerk's order.*"

In the last-named case, the affidavit for the attachment was defective in not stating that the claim was *just ;* and it is claimed by counsel that the point as to

which the above language is decisive was not presented; but the judgment of the lower court had to be reversed, and the question was raised whether, upon the return of the cause, the affidavit could be amended; and, after stating that if the attachment were void by reason of the defective affidavit, an amendment could not aid it, the court properly considered the question whether it was void, or merely erroneous; and, in doing so, used the language *supra*.

In the case of Bailey v. Beadles & Bolinger, 7 Bush, 383, there was a like defect in the affidavit as in the last-named case, and the court decided that it was indispensably necessary that an attaching plaintiff should state that his claim is just, and that the failure to do so was an irregularity warranting a reversal upon an appeal, but that it did not render the order of attachment or the judgment void.

A distinction is attempted to be drawn between the necessity for stating a ground for an attachment, and, as counsel term it, an affidavit for obtaining it, as that the claim is just, etc. We are unable, however, to perceive the force of it as to the question now presented. The same Code of Practice that requires the ground of attachment to be stated is equally as imperative in requiring that the plaintiff shall state that his demand is just; and it is said in Drake on Attachment, section 95, that the failure to make the latter statement, is just as fatal to the attachment as a failure to properly allege the ground of attachment.

In the case of Bailey v. Beadles & Bolinger, *supra*, the land attached had been ordered to be sold, and it was claimed that by reason of the defect in the affidavit

the order of attachment was void, and that the court had no jurisdiction to render a judgment either *in personam* or *in rem*, and in deciding this question, thus directly presented, the · court not only cited, with approval, the case of Allen v. Brown, but quoted from it as *supra*, showing that it did not regard that part of the opinion as *dicta*.

In Thomas v. Mahone, 9 Bush, 111, it is said : " The jurisdiction is acquired thirty days after the order of warning is made. It is at that time that the defendant is deemed to be constructively summoned. (Section 91, Civil Code.) The local jurisdiction of the court over the thing sought to be sold, and the jurisdiction acquired over the person of the defendant by the constructive service of process provided by law, authorizes the court to proceed, and, although the failure to appoint the attorney or to take the bond required by section 440 are reversible errors, the jurisdiction being complete, the judgment will not be void."

Again, in the case of Burchett, &c., v. Burchett, 5 Ky. Law Rep., page 314, this court held that in an attachment case, the jurisdiction of the court depends upon the actual or constructive service of process, and not upon the plaintiff's affidavit or the clerk's order.

There is no decision of this court in conflict with the rule laid down in the above cases.

In Bell, Berkley & Co. v. Hall's Ex'rs, 2 Duvall, 288, it was held, as to three of the cases (consolidated), that the attachments were "*unauthorized*" because it was not alleged that the defendant had voluntarily left the county of his residence; but in these cases the attaching creditors were at war among themselves as to the ·

priority of the attachments in the original suits ; and the question of their validity, or the sale under them, did not arise collaterally.

In the case now under consideration, the provisions of the Code of Practice as to constructive service were fully complied with, and it was because this had not been done that this court, in Brownfield, &c., v. Dyer, &c., 7 Bush, 506, held that the judgment then in question was void for want of jurisdiction.

In Grigsby, &c., v. Barr, &c., 14 Bush, 330, no attachment had ever been issued, and the sale of land that had been made was held to be void because the court had never obtained any power over it.

It would be unreasonable to require a purchaser at a judicial sale to examine the entire record upon which it is based in order to detect irregularities of procedure. It is true that the sale of the property of a non-resident under attachment is in derogation of the common law ; · that it involves the exercise of extraordinary power, and hence it should appear that the proceeding was *coram judice*. But, to prevent the unsettling of titles and technical objections from overriding principles at the expense of justice, courts should incline favorably to judicial sales.

In this instance, the property was purchased by the brothers-in-law of F. H. Paul ; they conveyed it to Mrs. Paul ; she sold it for $5,000, and presumably the appellants shared the benefit with her. Innocent purchasers had held it undisturbed for sixteen years before this suit was brought, and, during that time, as the various conveyances show, they have greatly improved

it, and equity, as well as the rules of law, forbid that they should now be deprived of it.

Judgment affirmed,

Judge PRYOR not sitting.

———

Chief Justice HINES delivered the following dissenting opinion:

On the twenty-third of December, 1861, the Legislature of this State passed an act, entitled "An act to amend the Code of Practice in civil cases," which is as follows:

"§ 1. That in addition to the grounds for attachments in the Code of Practice in civil cases, there shall be the following: That the defendant or defendants, or some of them, are in the service of the army of the so-called Confederate States of America, or any military body of men co-operating with said army.

"§ 2. That he or they have voluntarily left the county of his or their residence, have been absent therefrom thirty days, and, during said period of time, have been, and continued voluntarily, within the so-called Confederate States or their military lines.

"§ 3. That he or they have voluntarily left the county of his or their residence, for the purpose of joining the army of said Confederate States, or any military body of men co-operating with said army, or for the purpose of entering the service, either civil or military, of said Confederate States, and, leaving for such purposes, or either of them, have remained absent from such county, so that the ordinary process of law could not be served upon them for thirty days, and continued so absent."

The fourth section provides that any of these grounds "shall be sufficient to authorize and sustain the actions and attachments by creditors under section 259, of Civil Code."

The act also provides for a warning order, and that the attachment may be granted by the judge of any circuit or county court, or by the clerk of the court or justice of the peace, from whose office such attachment may issue.

The twelfth section of the act provides that the second section quoted shall not apply to any person so within the Confederate lines by direction of the United States or the State of Kentucky.

The only question presented on this appeal is the construction of this act. Appellants, as the children and heirs of F. H. Paul, sued, as in ejectment, to recover a certain portion of real estate in the possession of appellees. Appellees answer and set up title by purchase under a decree rendered in the circuit court of the county in which the land lies, and in which this action was instituted, and exhibit, as the foundation of their title, a copy of the proceedings that resulted in the decree.

If the court under whose decree appellees claim had jurisdiction to hear and determine the cause, any irregularity in the proceedings was subject to review only on appeal, but if the court had no jurisdiction, the decree of sale was void, and appellees can claim no title under it. In the first instance, the irregularity could be reached only by appeal; in the second, the whole proceedings may be disregarded and treated as a nullity, as is here attempted.

The history of the proceedings through which appellees claim title is as follows:

A. P. and William Hughes, in January, 1862, instituted separate actions, on promissory notes, alleged to be due and unpaid, and in the petition, in each case, allege that "said F. H. Paul has voluntarily left the county of his residence, has been absent therefrom thirty days, and, during said period of time, has been, and continues voluntarily, within the so-called Confederate States or their military lines." Following this is a prayer for judgment and for general attachment against the property of the defendant, and for all proper relief.

Subsequently one Bobbitt instituted in the same court an action, seeking the same relief, on an account in which he alleges: "That the said F. H. Paul has voluntarily left Henry county and State aforesaid, the county of his residence, has been absent therefrom for thirty days, and, during that period of time, has been, and continues, in the so-called Confederate States or their military lines."

These cases were consolidated, and one decree for sale of the land attached entered for all. There was no appearance by F. H. Paul to any of these actions; no actual service; no actual notice of their pendency.

It is claimed for appellants that the failure to allege in the two actions by Hughes that F. H. Paul was a resident of Henry county (in which the actions were brought), and a citizen of Kentucky, and the failure to allege, in the Bobbitt petition, that Paul voluntarily remained within the Confederate States, were omissions fatal to the jurisdiction of the court rendering the

decree of sale. In other words, there was a failure in two cases to allege residence or citizenship, and, in the other, a failure to allege that Paul *voluntarily* remained within the Confederate lines for the period of thirty days.

All, then, of these consolidated actions were evidently attempted to be brought under the second section of the act quoted, and were so treated by counsel in oral argument and in argument by brief, and it is manifest that the petition of Bobbitt fails to comply literally with the provisions of this section by omitting to state that Paul *voluntarily* remained within the Confederate States, and that there was a substantial failure of compliance in the Hughes petitions in omitting to allege the residence and citizenship of Paul. Do these omissions, or any of them, render void the decree of sale for want of jurisdiction by the court rendering it?

It seems, on principle, very clear that when a proceeding is authorized by statute against one who is to be constructively summoned, and there is no actual appearance, that the grounds for so proceeding should be strictly followed. It is, in effect, the taking of one man's property and giving it to another, without his knowledge and without his consent.

It has been uniformly held that so far as the requirement as to such constructive process was concerned, it should be strictly and even literally followed. Why not so, for as good if not for a stronger reason, in cases where the grounds, or the facts upon which the right to proceed at all, are prescribed by statute?

In the case being considered it is manifest that, in the absence of this statute, the court would have had

no pretense of jurisdiction over F. H. Paul or his property. In the absence of the statute, the petition, the warning order and the attachment would have been ineffectual to confer jurisdiction. How then comes jurisdiction? It is not from the warning order alone, it is not from the attachment alone, it is not from both combined. This is too plain for argument. Something else is plainly essential, and that is a petition stating facts upon which both the warning order and the attachment are based. But suppose the petition states facts, the existence of which do not, under the law, authorize the issual of the one or the other? In that case the proceeding would be outside the law, as there is no such thing under our system of summary proceeding, by reason of the common law. The authority to proceed at all is by reason of the statute, and, therefore, a compliance with its provisions is essential to the exercise of jurisdiction.

We have no more right to disregard one of its provisions than we have to disregard all. If we can disregard the provision that the absent defendant *voluntarily* remained within the Confederate States, we can as well disregard the requirement that he should *voluntarily* have gone into the Confederate States, and as well the implied requirement that he was a citizen of Kentucky and a resident of the county in which the action is brought.

This section of the act was construed by this court in Buckley v. Hall, 2 Duvall, 291, and the attachment issued held invalid, because of the failure to allege the facts indicated. It is there said :

"The essential primary fact to be alleged, is that the

debtor has voluntarily *left the county of his residence*, thereby limiting the remedy, by implication at least, to residents of the State ; next, that he has been absent therefrom for thirty days ; and, lastly, that during said period he has been, and continues *voluntarily*, within the so-called Confederate States or their military lines.

"The fact of his having *voluntarily left the county of his residence* is nowhere alleged in the petition in express terms ; nor does the language, by any allowable or reasonable interpretation, convey that meaning ; for although it may be inferred, as it is alleged that he left the State with his family, that he left it voluntarily, still it by no means follows that he resided in the State. By the omission to allege that important fact in the original petition, the attachment, when it was issued out, was unauthorized."

Where the grounds upon which an attachment may issue are prescribed in the statute, a statement of such grounds in the affidavit or petition, as in this case, is the foundation of jurisdiction, and a failure, therefore, to state them renders all subsequent processes and orders of the court a nullity.

The petition, to be such as to confer jurisdiction, must contain, first, a statement of the *cause* of action, and, second, *grounds* upon which the attachment is sought.

It is not the truth or falsity of such grounds that confers jurisdiction, but the fact that they are alleged to exist. If they are alleged to exist, all subsequent errors of the court are irregularities simply, and can be corrected only on appeal or by direct proceeding for that purpose. They can not be collaterally attacked.

Drake on Attachments, fourth edition, section 437, says:

"This notice (warning order) is not necessary to give the court jurisdiction of the action. Its object is simply to inform the defendant, if possible, that proceedings have been taken against him.

"Whether a court has jurisdiction of any particular proceeding is determined by establishing its authority to take the first step therein. When, therefore, in an attachment cause, the ground required by statute has been laid for the issue and execution of the process, and the process has been issued and executed, the jurisdiction of the court attaches. If this ground be not laid, there is no right to take the first step, and that and all subsequent ones are simply void. * * * When, therefore, notice to the defendant by publication is required, it is not an element of the jurisdiction of the court, but is necessary to authorize the court to exercise its jurisdiction by giving judgment in the cause." (Sections 88 and 89.)

In the case of Mayples v. Tunis, 11 Humphrey, 108, it was held that a failure to state in the affidavit for an attachment the grounds prescribed by statute, although the attachment was every way regular, rendered all the proceedings void, and the purchaser at the sale of the attached property took no title.

In the case of Conrad v. McGee, 9 Yerger, 428, the statute required that an attachment might issue when it was stated "that any person hath removed, or is removing himself or herself out of the county privately, or so absconds or conceals him or herself that the ordinary process of law can not be served."

The affidavit upon which the attachment issued, recites: "Oath having been made, that the said Henry Dainwood hath absconded, or so conceals himself from said county that the ordinary process of law can not be served upon him." It was held that the affidavit was so defective that all proceedings under it were void.

In the case of Staples v. Fairchild, 3 Comstock, 43, a proceeding by attachment founded on a verified application therefor, the court said :

"Although the application of Sandford, the creditor, was in writing and verified by his affidavit, and in it was specified the sum in which Bradley was indebted to him, over and above all discounts, and that such demand arose upon contract, and that Bradley was not a resident of this State, but a resident of the State of Connecticut, it does not state, as the grounds upon which the application was founded, either that Sandford *resided* within this State, or that the indebtedness of Bradley to him arose upon a contract *made* within this State. It was first said on the argument that it was not necessary that the *residence* of the creditor should be stated in the application. That would be true in a case where the *residence* of the creditor was not the ground relied on to give jurisdiction to the officer to issue his warrant or attachment. When the application omits to state that the residence of the creditor is within this State, to show jurisdiction in the officer it must state that the contract upon which the indebtedness arose was *made* within this State. It is not enough to specify the sum of the indebtedness, that it arose upon contract, and that the debtor was a nonresident of this State. But, to give jurisdiction to the

· officer, it must be also stated in the application, either that the creditor *resides* within this State, or that the indebtedness arose upon a contract *made* within this · State."

It was held that the attachment, having been issued without jurisdiction, was void, and that the purchaser took no title to the premises sold under such proceed-.ings.

The cardinal error in the argument of counsel for appellees is in assuming, first, that the court below had jurisdiction, and that, therefore, all errors subsequently committed were mere irregularities. This is true if the court had jurisdiction, but that is the gist of the proceeding ; and, secondly, in assuming that jurisdiction is complete by the actual or constructive service of summons on the defendant.

Both of these propositions are so much involved, the · one within the other, that I will not attempt to separate them, but treat them as one.

In the case of Grigsby v. Barr, 14 Bush, 330, there was ..a proceeding to subject the property of a non-resident, in which proceeding there was a warning order in due ·form, a prayer ' in the petition to subject a particular piece of real estate, and for an attachment against the defendant's property. No attachment was levied. The property was sold under judgment entered in that case, and subsequently the owners of the property at the time of the institution of the suit and at the time of the sale, brought suit against the purchaser at the decretal sale, and recovered upon the ground that, in the absence of the levy of an attachment, the warning ·order, issued in due form and time, did not confer juris-

diction, and, therefore, did not prevent him from proceeding to question, collaterally, the jurisdiction of the court rendering the decree of sale.

So it is seen that constructive process in attachment proceedings against one without the sovereignty, is not, in itself, sufficient to confer jurisdiction. Nor can jurisdiction be acquired by simply making the required affidavit, and having an attachment issued and levied.

The incipient step in the acquisition of jurisdiction, in such cases, is the filing of the affidavit, setting forth the grounds authorizing the attachment, and if embraced in a petition, as in this case, there must be a statement of the cause of action. The next step is the making of the warning order, and, third, the issue and levy of the attachment.

The expression, in some of the cases in this State, that jurisdiction is complete when there has been constructive service of summons, means nothing more than that without such service, no matter how complete the affidavit, there is no jurisdiction. For instance, in the case of Brownfield v. Dyer, 7 Bush, 505, when there was an *exparte* action by warning order, this court held the whole proceeding void, because the warning order required the appearance of the defendant at the next term of the court, which began within eighteen days, when the Code required the appearance at the next term, not commencing within sixty days. That is, the court held that there was no constructive service of process, and that, although the foundation for the action was properly laid in the affidavit for an attachment, there was no jurisdiction.

It is to be borne in mind, as already stated, that in

such *exparte* proceedings, when the ground for the attachment is stated in the affidavit, the petition must first state a cause of action, and, second, the grounds authorized by statute for the attachment.

In the case of Allen v. Brown, 4 Met., 342, relied upon by counsel for appellees, the court held that the judgment, where there was no attorney to defend, no bond executed, and a failure to allege that the claim was just, was not void, but simply erroneous, and that, on the return of the cause, these errors might be corrected, the defendant having appeared and appealed from the judgment against him. This case proceeded upon the idea that jurisdiction had attached by a statement of the grounds for attachment, and by the issual of the warning order. The proper distinction between the ground of attachment and a statement of the cause of action seems not to have been disregarded.

In the case of Thomas v. Mahone, 9 Bush, 11, the jurisdiction of the court appears to have attached by filing the affidavit required by the act of December 23, 1861, and by the issual of a warning order, and was held that the fact that the attorney appointed to defend could not lawfully communicate with the absent defendant, and the failure to take bond for the restoration of the property, were mere irregularities that did not render the judgment void. The court expressly recognizes that jurisdiction had attached, but erroneously states, by way of argument, that the jurisdiction came from the proper issual of the warning order alone. If the question had been as to whether the affidavit stated proper *grounds* for the attachment, the opinion in

that case would have some bearing, but the sufficiency of the affidavit as to the grounds for attachment are recognized in the opinion. So in the case of Bailey v. Beadles, 7 Bush, 383, relied upon by counsel for appellees, the *grounds* for attachment, the non-residency of the defendant, were. properly alleged, and a failure to allege the claim was "just" was held to be an irregularity simply.

It will be found in all the cases where it is said that the proceedings were not void because of the omission to do certain things, that jurisdiction had attached by allegation of the existence of the grounds required by the statute, and that there had been constructive service of process.

It does not follow that, because an affidavit in such cases is so defective that proceedings based upon it will be void, it may not be amended; nor, as a corollary, that if it can be amended, it is not void. If there is no affidavit, there can, of course, be no amendment, because there is nothing to amend, but when there is the substance of an affidavit, it may be amended. (Mayples v. Tunis, 11 Humphrey; Drake on Attachments.)

As there was no amendment of the petitions in these cases, I am of the opinion that the defects indicated were fatal to the exercise of jurisdiction by the court making sale of the property, and that, therefore, no title passed to the purchaser, and that, as appellees claim through the purchaser, they have no title to the land in controversy.