# Union Bank & Trust Co. v. Edwards.

Feb. 13, 1940.

694

Shumate & Shumate for appellant.
H. E. Hay, J. P. Chenault and H. M. Barker for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Reversing.

This appeal seeks reversal of a judgment of the Estill circuit court, rendered in an action brought by appellee to recover damages, claimed suffered as the result of appellant's having maliciously, and without probable cause, prosecuted an illegal attachment suit against him.

The special damage alleged in this suit is that appellant, by wrongfully and maliciously attaching appellee's interest in a certain oil and gas lease, frustrated his plan to make a profitable sale of it.

The facts bearing on this issue are that appellee, with two associates, had acquired early in 1934 an oil and gas lease upon a certain 500 acre tract of land, situated in Lee county and owned by Andrew Combs. They began drilling operations on the lease, which resulted in their bringing in a couple of oil wells. At first, the second of these wells was regarded as a valuable one, in that it promised a large oil production, and the spreading rumor and report of the "strike" brought many oil men to the scene for the purpose of inspecting the well and securing options upon the lease.

At this time, the appellee, Dr. Edwards, a resident of Irvine, Estill County, Kentucky, was heavily indebted to the appellant bank.

The officers and directors of the bank, on learning of the appellee's reported lucky oil "strike," filed an attachment suit against him, wherein it sought recovery of a judgment upon two notes it held against him in the sum of some $3,300, and to secure payment of the judgment it might obtain thereon, it sued out and had levied an attachment against Dr. Edwards' interest in this leasehold property in Lee county.

No separate affidavit for the attachment was filed and the attachment was obtained upon the bank's verified petition, which, it appears, did not meet the mandatory requirements of section 196, Civil Code of Practice, in that the bank failed to allege therein that its claim was just.

The defendant, having been duly summonsed, appeared and filed answer, admitting his indebtedness to appellant upon the notes sued on and further alleging that they were but renewal notes for a part of a larger

indebtedness owing it, which was secured by a real estate mortgage. Wherefore he prayed that plaintiff be compelled to satisfy his indebtedness by a sale of the mortgaged real estate "before attaching or selling the property attached and for all proper relief."

The court sustained a demurrer to this answer, when, the defendant declining to plead further, it entered a judgment against defendant for the amount of his indebtedness, interest and cost. It was further adjudged that the allegations of plaintiff's petition were to be taken as true, that the bank's attachment upon the interest of defendant in the leasehold property be sustained and that same be sold to satisfy the judgment.

It further appears, and is undenied, that the appellant bank, after obtaining and having levied the attachment upon appellee's interest in the Lee county oil and gas lease, did nothing to interfere with the appellee's operation of the leasehold property, but on the contrary, there is evidence that it endeavored to co-operate with the appellee in his efforts to sell it, though he emphatically denies this.

However this may be, appellee, despite his continued efforts to sell this lease, was unable to do so, the parties in interest finally joining in an assignment of the lease to an experienced oil man, J. D. Johnson, for his further development of this leasehold property. The appellant bank joined in this assignment, releasing its attachment lien and substituting therefor the provision that the sale proceeds of appellee's proportional part of any oil struck would be paid over to the bank until his debt was thereby satisfied.

Johnson, having decided that this lease was without promise or value, stopped making further tests thereon and shortly following, the lease having expired, the lease owners, together with the bank, joined in releasing it to Combs, the lessor.

Following such failure to find oil in paying quantities upon this 500 acre tract of land in Lee county, the appellee, Dr. Edwards, claiming that his loss and damage suffered, in failing to make sale of his lease, was due to the malicious and wrongful intervention of appellant in filing the attachment suit against him and attaching his interest in the leasehold property at the time of

making a promising oil strike thereon, which created a market for it, filed a suit against the bank, here appellant, seeking recovery of damages suffered by reason of appellant's alleged malicious prosecution of its wrongful and illegal attachment suit.

By this petition he charged that appellant had illegally obtained the order of attachment against his leasehold property on August 24, 1934, a day in advance of filing its petition, which he alleged was filed on August 25, and that for such reason the attachment obtained and levied upon his leasehold property was void. Hall v. Grogan, 78 Ky. 11. Also he alleged in his petition that the bank's petition in the former suit (upon which the order of attachment was issued) was improper in its verification, in that it was signed and sworn to by its cashier, rather than its president.

Further, he alleged that the bank had damaged him to the extent of some $15,000, for which he prayed judgment with interest, by reason of its maliciously and without probable cause bringing this attachment suit.

Numerous and extended pleadings followed, making up the issues.

At the conclusion of all the evidence, the court peremptorily instructed the jury to find for the appellee, under which it assessed and found damages for him in the sum of $4,500, upon which judgment was entered. This appeal is prosecuted for a reversal of that judgment.

We deem it unnecessary to enter upon a discussion of the several issues here sought to be made and the lengthy arguments advanced in their support, in view of the conclusion we have reached that the judgment obtained by appellee in his suit for malicious prosecution must be reversed, for the reason that in same he does not, nor could he, allege that he was the successful party in the attachment suit, upon which he bases this action for damages, contending that same was wrongfully prosecuted by appellant, in that it was brought both maliciously and without probable cause.

The applicable and controlling rule in such case is, as announced in McBride v. Alles et al., 222 Ky. 725, 2 S. W. (2d) 391, that:

"It has often been held by this court that, to sustain such an action (malicious prosecution), both malice and the want of probable cause must be shown. It has also been held that, if the action terminated in favor of the plaintiff, this is conclusive evidence of probable cause, although the judgment was rendered in the court in which the suit was brought, and this judgment was afterwards reversed or set aside on appeal. Basham v. Citizens' Loan Company, 216 Ky. 251, 287 S. W. 719, and cases cited." (Parenthesis ours).

In Liverpool & London & Globe Insurance Company v. Wright et al., 166 Ky. 159, 179 S. W. 49, 51, the court, in there announcing and discussing this rule, said:

"In actions of this character (false imprisonment) it is necessary to show the termination of the proceedings complained of. If an action for malicious prosecution, the complainant must show that the prosecution of which he complained terminated favorably to him, or that his conviction was procured by perjury or corrupt practices, and in an action for false imprisonment the same rule applies. Duerr v. Kentucky & Indiana Bridge & Railroad Company, 132 Ky. 228, 116 S. W. 325; Spring v. Besore, 12 B. Mon. 551; Hegan Mantel Company v. Alford [Ky.], 114 S. W. 290." (Parenthesis ours.)

See, to like effect, 18 R. C. L. section 11, page 21, thus announcing this rule:

"It is a well recognized requirement that before one can maintain an action for malicious prosecution against him he must allege and prove a termination of the original proceeding in his favor, whether such proceeding was a wrongful civil action or criminal prosecution. The reason for the rule is apparent. Until a complaining party has shown that the action against him was unsuccessful, he has not shown that he has suffered any damage, and if he were permitted to sue before he had won the first suit, he might secure a recovery for the bringing of an action which the court entertaining such cause found to be well brought."

The gist of an action for malicious prosecution is that the plaintiff has been improperly made the subject

of some legal process to his damage. The essential element of such an action is the malicious prosecution of some legal proceeding without probable cause.

It is no ground of action that the suit was maliciously commenced, unless it was commenced without probable cause, and where the plaintiff, upon the trial of his attachment suit, has his attachment sustained, such ruling clearly establishes the existence of probable cause for its bringing.

In the instant cases, the appellant, in its attachment suit, succeeded in recovering judgment for its debt and in having its attachment lien, issued and levied on the leasehold, sustained. In fact, the defendant therein (here the appellee) did not by his answer, or at all, challenge the sufficiency of the affidavit contained in the verified petition or the validity of the order of attachment based thereon, nor did he allege that the attachment was maliciously or unlawfully levied or move for its discharge. On the contrary, by his failure to in anywise attack the validity of the attachment proceeding, defendant impliedly recognized its validity.

Such being the character of the answer filed, it follows, in harmony with the rule above announced, that the judgment, in sustaining the attachment and adjudging a sale of the leasehold property by way of enforcing the lien of attachment for satisfaction of the judgment debt, is conclusive of all matters that were litigated and determined in the attachment suit and the validity of the attachment cannot here be collaterally questioned unless it was void, or that is, that the attachment suit was brought without probable cause.

The order and levy of attachment having been adjudged sustained as valid and probable cause for the suit thereby conclusively established, it became immaterial whether or not its bringing was motivated by malice. Therefore, even if the attachment suit was maliciously brought, such malice did not constitute a ground or legal foundation for bringing a malicious prosecution action to recover damages resulting from the lawful bringing of the attachment suit. Basham v. Citizens' Loan Company, 216 Ky. 251, 287 S. W. 719; McBride v. Alles et al., 222 Ky. 725, 2 S. W. (2d) 391.

However, appellee further contends in brief of coun-

sel that the affidavit contained in appellant's petition, in attempting to set out its claim as mandatorily required by section 196, Civil Code of Practice, was fatally defective, by reason of its failure to state its claim was just. He contends that such omission was jurisdictionally fatal and rendered the order of attachment issued thereon void.

In support of this contention, it is argued that in an unbroken line of cases, this court has held to the rule that a strict compliance with the mandatory provisions of section 196, Civil Code of Practice, is essential to the validity of the attachment and, further, that these requirements are jurisdictional, with the result that, its being void for such reason and the court therefore without jurisdiction of the res, the validity of the attachment could be attacked by appellee collaterally in this action for malicious prosecution.

Appellee cites the cases, among others, of Frick & Lantz & Ogden, 199 Ky. 354, 251 S. W. 196, and United Collieries, Inc., v. Martin, 248 Ky. 808, 60 S. W. (2d) 125, 89 A. L. R. 971, as supporting this contention.

In answer to it, we may first consider what is the nature, origin and purpose of an attachment proceeding.

In 4 Am. Jur. section 3, page 552, an attachment is defined as "a remedy for the collection of an ordinary debt, proceeding by a seizure under legal process, termed 'a writ or warrant of attachment,' of the property of the debtor. It is tantamount to an involuntary dispossession of the defendant prior to any adjudication of the rights of the plaintiff—an execution so to speak, in advance of trial and judgment."

Section 6, page 555, provides that an attachment, being an ancillary proceeding, "can have no independent existence apart from a suit on a claim of the plaintiff against the defendant" and in section 8, page 555, it is stated that "the remedy of attachment or garnishment is in derogation of common law and exists only by virtue of statute."

Also in section 26, page 566, of the same authority the conflicting rules as to the strict or liberal construction of the statute creating the remedy of attachment are thus stated:

"Proceeding upon the theory that the remedy by attachment was unknown at common law and is purely of statutory origin, and influenced by the further consideration that the remedy is deemed to be harsh and extraordinary in its character, the courts generally, in the absence of any express provisions relating to the construction of the statutes, are inclined to interpret the enactments creating the remedy strictly in favor of those persons against whom it may be invoked. Attachment is held to be justified only when the statute is strictly pursued for legitimate purposes, and the cases in which it may be resorted to will not be extended. The writ will not be granted unless it is made to appear that the grounds therefor are well founded.   *   *   *

"While the remedy of attachment or garnishment is statutory and in derogation of the common law, strict construction should not be pushed to the extent of nullifying the beneficial intent of the statute or depriving the creditor of recourse thereto in a proper case, for it is an indisputable fact that the policy of the law is that a man's property shall be amenable to legal process for the satisfaction of his pecuniary indebtedness.   *   *   *   In some states the statutes expressly require that a liberal construction be put upon their provisions. In any event, such a construction ought to be given to a law, if it will reasonably admit of it, as will not suffer it to be defeated, and technically should not be allowed to override justice.

"It is said, however, that the rule of liberal construction of attachment and garnishment statutes to effect their purpose is applicable only where jurisdiction has been obtained."

Cited in support of this text is the case of United Collieries v. Martin, 248 Ky. 808, 60 S. W. (2d) 125, 89 A. L. R. 971.

Section 86, page 608, of the above text states that:

"All courts do not follow the rule set forth in the preceding section that jurisdiction in attachment or garnishment follows from the lawful seizure of the res within the jurisdiction of the court, for some

courts have taken the position that in such proceedings, where the court exercises an extraordinary power under special statutory provisions prescribing its course, that course must be strictly pursued, and the facts which give jurisdiction must appear on the face of the record. Otherwise the proceedings are not merely voidable, but absolutely void, as being coram non judice. It is therefore, a settled rule of these courts that any material departure from the requirements of these statutes will vitiate the proceedings and render them utterly void. After the abandonment of one writ of attachment, if another is taken out, it becomes necessary, in taking out the new attachment, that it should be accompanied with all the formalities necessary to give it validity as a separate and distinct proceeding."

Also, it is stated in section 475, page 843, of the same text that:

"The division of authority as to the effect of irregularities and defects in the attachment proceedings must be kept constantly in mind in considering the practice and procedure in the attachment proper, for under the one view a stricter compliance with the provisions of the attachment statutes is necessary to sustain the attachment against adverse motions and proceedings and collateral attack than is required under the other view. However, where an attachment is, for any cause, void and not merely voidable, it cannot be amended against either the defendant, an intervenor, or a subsequent creditor. But where there has been an attempt to comply with the law, and the attachment is regarded as merely defective or inadequate, in other words, as erroneous but not wholly void, an amendment will ordinarily be allowed."

By section 482, page 847, of the same text, it is stated that:

"The attachment affidavit is prescribed by statute in most states as a prerequisite to the issuance of the writ of attachment, and the prevailing view is that such a statute contemplates compliance with the requirement as a prerequisite to the jurisdistion of the court. * * * Such an affidavit is a sworn

statement of such facts as the laws require as a condition precedent to the issuance of the writ, and in these jurisdictions no lawful attachment can issue in its absence, nor can jurisdiction be acquired without it; its entire omission renders all the proceedings coram non judice. According to some courts, the omission from the affidavit of any essential fact has the same effect. In any case jurisdiction in attachment cannot be predicated upon a fraudulent affidavit, for fraud vitiates all things. Some courts, particularly those adhering to the general doctrine that jurisdiction in the attachment flows from the seizure of the res within the territorial jurisdiction of the court, and not from the regularity of the attachment proceedings (among which is ours), take the view that a mere insufficient averment in the affidavit, rendering it defective and voidable, does not make the proceeding void or without jurisdiction.'' (Parenthesis ours.)

See Paul v. Smith, 82 Ky. 451, where the court held that though ''the omissions, in stating the grounds of attachment, were irregularities of such a character that they would have authorized a reversal of the judgment upon a direct appeal from it,'' they did not render it void.

Again, there is cited in support of this text the recent case of United Collieries, Inc., v. Martin, supra, which is also cited and strongly relied on by appellee as holding that where the affidavit was defective in omitting to state ''the claim was just,'' the attachment issued thereon was void and that such omission was fatal to the jurisdiction of the court.

We do not so interpret the holding in the Martin case [248 Ky. 808, 60 S. W. (2d) 126, 89 A. L. R. 971], where the court, in discussing this point, clearly otherwise holds when saying, ''This court has held that an order of sale on an attachment issued on a defective affidavit is not void but voidable. Paul v. Smith, 82 Ky. 451. The proceeding is irregular and is ineffectual in respect to bona fide liens subsequently acquired on the property until corrected.''

Applying these principles announced by both textbook and case, as set out supra, we are led to conclude

that even though the affidavit upon which appellant secured its order of attachment was defective, such fact only served to make the attachment voidable rather than void; and therefore, it being but irregular or voidable, the validity of the order of attachment issued could not in this prosecution be collaterally attacked, but could only serve for such purpose in a direct appeal from the voidable order.

See in accord herewith Paul v. Smith, 82 Ky. 451; Cooper v. Reynolds, 10 Wall 308, 19 L. Ed. 391; and also Bailey v. Beadles & Bolinger, 70 Ky. 383, 7 Bush 383, holding that while it is "indispensably necessary that the attaching creditor shall state that his demand is just, and that a failure to do so is an irregularity which warrants, a reversal by this court," it did not render the order of attachment or the judgment void.

Such being our conclusion as to the judgment in the attachment suit, sustaining the ground of attachment therein (that it could not be collaterally attacked in this suit for malicious prosecution), and also that the evidence, upon the issue of whether or not the attachment in the first suit was issued before the bank's petition was filed, was very conflicting, we are of the opinion that the trial court's judgment, in giving a peremptory instruction upon the conclusion of this evidence was erroneous and its judgment must be, for the reasons hereinabove stated, reversed.