Shannon BLANKENSHIP, Appellant,

v.

Elmer STATON et al., Appellees.

Court of Appeals of Kentucky.

June 2, 1961.

Rehearing Denied Sept. 29, 1961.

John S. Deering, Nicholasville, for appellant, on original appeal.

Robin Griffin, Miller, Griffin, Marks & Stephens, Lexington, B. T. Moynahan, Nicholasville, for appellant, on petition for rehearing.

Will Tom Wathen, J. Quentin Wesley, Morganfield, for appellees.

CLAY, Commissioner.

Plaintiff appellant filed an indemnity suit against defendant appellees to protect a lien on certain real and personal property he had sold to defendants. The indebtedness of defendants on certain notes (aggregating $20,000) had not matured but an attachment, authorized by KRS 425.375, was obtained. After a procedural nightmare the attachment was discharged and defendants recovered $26,000, including $5,000 punitive damages, on their counterclaim for malicious prosecution. Plaintiff in his initial brief took the position that this judgment is so ridiculous that his brief could be written on a postage stamp. (We much prefer a brief which complies with RCA 1.210, particularly section (b) thereof).

Plaintiff filed his suit and attached defendants' property on December 9, 1958, giving notice that he would move on December 19 for the appointment of a receiver. On December 18 defendants gave notice that on December 19 they would move the court to discharge the attachment.

On December 19 the plaintiff filed an amended complaint and defendants filed a counterclaim alleging a wrongful attachment. After a hearing on the motions, the court denied a receiver, discharged the attachment, and the cause was passed until further orders. Thereafter numerous amended pleadings and motions were filed and eventually a jury trial was held on the counterclaim for malicious prosecution.

At the time plaintiff filed his suit he held notes of the defendants approximating $20,000, none of which was due. By the time of the trial the notes had become due and the court directed a verdict for the plaintiff in the amount of this indebtedness. The issue of malicious prosecution arising out of the wrongful attachment was submitted to the jury and it returned an itemized verdict for $26,662.

As to the issue of his liability the plaintiff claims the following errors: (1) the court could not discharge the attachment on the merits *in vacation,* (2) defendants had no cause of action (on their counterclaim) for malicious prosecution because the lawsuit did not terminate in their favor, and (3) the court should have instructed the jury on the defense of "advice of counsel."

■ The contention that the circuit court may not discharge an attachment during vacation cannot be sustained. KRS 425.500 (formerly Civil Code of Practice section 265) specifically allows the defendant to move to discharge the attachment "At any time before the attachment is sustained," and authorizes the court to act upon the motion forthwith.

KRS 425.510 (formerly Civil Code of Practice section 268) authorizes the court to discharge the attachment *"in vacation"* upon specified procedural grounds. In Standard Hay and Grain Company v. Ratliff Brothers, 144 Ky. 161, 137 S.W. 1035 (decided in 1911), this Court held that the proceeding under section 268 was the only one authorized *in vacation* and the court could not discharge an attachment on the merits except during the term. For reasons unnecessary to discuss, that opinion appears unsound. However that may be, the ruling in that case is obsolete and no longer controlling.

In 1953 the Court adopted Civil Rule 6.03 which provides in part:

"(1)  *  *  * · The continued existence or expiration of a term of court in no way affects the power of a court to do any act or take any proceedings in any civil action which has been pending before it.

"(2) The judge of each circuit court may make or direct in vacation any order, rule, judgment or decree in any civil action, except the conducting of a trial when a jury is required under these rules.  *  *  *."

Substantially these same provisions had been theretofore enacted in 1948 by KRS 23.150. In 1952 this statute was amended to apply only to criminal cases to eliminate the unnecessary duplication of CR 6.03 (above quoted) which governs civil cases.

Assuming that sections 265 and 268 of the former Civil Code of Practice were correctly construed in the case above cited, which we seriously doubt, CR 6.03 super-seded and took precedence over the procedural limitations embodied in those sections. KRS 447.156. Therefore the circuit court properly ruled on the motion to discharge the attachment in vacation.

■ Plaintiff next contends, although he did not move for a directed verdict on this issue, that defendants could have no cause of action for malicious prosecution because he recovered judgment on the notes. He cites respectable authority for the proposition that no cause of action for malicious prosecution will lie unless and until the alleged wrongful civil proceeding has terminated favorably to the claimant. This is a well established principle. See Union Bank and Trust Company v. Edwards, 281 Ky. 693, 137 S.W.2d 344. The difficulty with plaintiff's argument arises from a failure to recognize that the *attachment proceeding* is the basis of defendants' claim of malicious prosecution, not the suit on the notes (which developed into a cause of action for plaintiff *after* the attachment proceedings had been terminated).

No question is raised concerning the right of a party to assert a common law cause of action for malicious prosecution based upon a wrongful attachment in a civil suit. This right was specifically recognized in Basham v. Citizens' Loan Company, 216 Ky. 251, 287 S.W. 719. See also Union Bank and Trust Company v. Edwards, 281 Ky. 693, 137 S.W.2d 344; City Lumber Company v. Barrett, Ky., 327 S.W.2d 402; 5 Am.Jur., Attachment and Garnishment, Section 984 (page 189) ; and 7 C.J.S. Attachment § 516, p. 663. (The remedy is available even though the complaining party could have sued on the attachment bond or under KRS 411.080.)

In applying the rule that before a party has a cause of action for malicious prosecution the lawsuit or proceeding must terminate in his favor, it is necessary to determine what suit or proceeding is involved. Plaintiff says that because he eventually recovered judgment on the notes, the suit terminated favorably to him, not the defend-

ants. However, defendants have at no time even suggested that plaintiff wrongfully prosecuted an action on the notes. Their claim is that the plaintiff maliciously prosecuted an indemnity proceeding under KRS 425.375 and wrongfully obtained an attachment. This is the proceeding that terminated favorably to the defendants when the court, on December 19, discharged the attachment. See 5 Am.Jur., Attachment and Garnishment, Section 988, and cases cited therein; Zinn v. Rice, 154 Mass. 1, 27 N.E. 772, 12 L.R.A. 288, and Hyde v. Southern Grocery Stores, 197 S.C. 263, 15 S.E.2d 353. Consequently defendants had a proper adjudicated basis on which to rest their claim.

■■ The third contention is that since want of probable cause and actual malice must be shown to recover for malicious prosecution, advice of counsel constitutes a defense and plaintiff was entitled to an instruction on this issue. Admittedly advice of counsel, given upon full disclosure of the facts, constitutes a defense. Baber v. Fitzgerald, 311 Ky. 382, 224 S.W.2d 135. However, plaintiff failed to offer an instruction on it and failed to object to the instructions of the court which omitted it. It is well settled that a party may not on appeal complain of error in the instructions which was not called to the attention of the trial court either by objection (specifying the grounds) or by offered instructions. CR 51. Struetker v. Neiser, Ky., 290 S.W.2d 781. Therefore this ground for reversal cannot be sustained.

■ It is our opinion that no error occurred with respect to the holding of liability on the part of the plaintiff. However the further contention is made that the damages are excessive, and in this we find merit.

In addition to $1,002 for loss of perishable merchandise, $660 for legal fees and $5,000 as punitive damages, the verdict awarded the defendants $20,000 for "Loss of profit, destruction of reputation and standing in community, humiliation, embarrassment and mental pain, suffering and shock to Mrs. Josephine Staton." It is the latter item that the plaintiff claims is excessive.

The store was closed under the attachment from December 9 to December 19, 1958. The trial of the damage claim was held on March 17, 18 and 19, 1959, the verdict being returned on March 19. The evidence on damages thus was addressed to what had occurred in a period of three months following the discharge of the attachment on December 19.

The evidence on damages may be summarized as follows: *As to loss of profit,* testimony of Mr. Staton that the net profit of the store for 1958 was $5,800, that for the nine days immediately preceding the attachment levy the gross receipts were $2,642 and for the 18 days immediately following the discharge of the attachment the gross receipts were only $2,196, that "I lost meat processing customers," and "I practically lost my business;" testimony of a clerk that he quit working in the store the last week in January 1959 "because there was not enough business for his services" (he had worked only three or four weeks before the attachment levy); testimony of three former customers that they did not resume their trade with the store after it was reopened following discharge of the attachment; testimony of a grocer from another town that if his store were closed for 10 days he would be unable to open business again "unless he had a large nest egg to draw from" (this testimony is worthless); testimony of Mrs. Staton that they had a loss on accounts receivable of over $1,000 (it is not clear how the closing of the store could account for customers not paying their bills), and that "they had lost their customers." *As to loss of reputation and standing,* aside from the above testimony concerning loss of customers, there was only the bare statement of Mrs. Staton that "they had lost their * * * good will, had lost their reputation." *As to humiliation, embarrassment, mental pain, etc.,* the narrative statement of the evidence recites only that Mr. Staton "testified as to

his humiliation, his embarrassment and his worry," and that Mrs. Staton "testified that, because of * * * worry and embarrassment, she became highly nervous and had been going to a doctor and he was treating her for a nervous condition which she did not have prior to the closing of the store."

With respect to loss of profits and of reputation and standing there are two rules that we consider applicable here. One is that only such damages are recoverable as are the natural and proximate result of the wrongful act. Western Union Telegraph Co. v. Guard, 283 Ky. 187, 139 S.W.2d 722; 15 Am.Jur., Damages, secs. 133, 135, pp. 541, 544. The other is that remote, conjectural or speculative damages may not be recovered. Kentucky Utilities Co. v. Warren Ellison Cafe, 231 Ky. 558, 21 S.W.2d 976; Barley's Adm'x v. Clover Splint Coal Co., 286 Ky. 218, 150 S.W.2d 670.

Evaluating the evidence concerning loss of profits, reputation and standing, we find it shows only that in the first month following the reopening of the store the gross receipts dropped off materially and there was a loss of some customers. The net profit for 1958 was less than $500 per month, so even a complete loss of profits for the three-month period immediately preceding the trial could not exceed $1,500. Any award in excess of that sum would have to be based on anticipated future losses, continued and permanent. In our opinion the evidence is not sufficient to establish that as a natural and proximate result of the closing of the store for a ten-day period there will be a continued loss of profits for such a period extending into the future as to warrant a substantial award of damages based on a long-term loss. Furthermore, even if some permanency of the future period of loss be considered reasonably probable, the evidence as to the amount of loss is in the field of conjecture and speculation. We realize that in cases of this nature some latitude must be allowed the jury, but in our opinion the evidence here cannot sustain an award of even half the amount given by the jury.

As concerns damages for humiliation, embarrassment, mental suffering, etc., we have by way of evidence only the general statements of the Statons that they were humiliated and embarrassed, and the statement of Mrs. Staton that she became highly nervous so as to require medical treatment. This evidence is purely subjective and does not produce the conviction that great suffering has been endured. The standard of damages in Kentucky for items of this nature has not been high. See Peel v. Bramlett, 298 Ky. 20, 181 S.W.2d 448; W. T. Grant Co. v. Taylor, 223 Ky. 812, 4 S.W. 2d 741. The evidence here will not support a major award of damages.

The award of $20,000 for the combined items of damages above discussed strikes us as being so excessive as to have been the result of passion and prejudice. Accordingly, it is our opinion that the entire verdict should be set aside and a new trial granted on the question of damages.

Because of the excessiveness of the damages the judgment is reversed, with directions for a new trial to be confined to the issue of damages only.

WILLIAMS, J., not sitting.