PERRY'S ADMINISTRATORS, Respondents, *vs.* ROBERTS, Appellant.

1. In a suit by administrators, declarations of the intestate are not admissible evidence for them.
2. An application for a change of venue is properly overruled, when not applied for until the cause is called for trial, no previous notice having been given of the application.
3. Before a party can prove the contents of a paper, he must prove the existence of an executed original.
4. Where notes sued on are proved to have been given upon a settlement, and the defendant sets up a claim which accrued prior thereto, he must show that it was not included in the settlement. If the disputed claim was discussed at the time, the settlement will be held to embrace it, unless it clearly appears that the parties agreed to leave it open.

### Error to Washington Circuit Court.

This was a suit begun by respondents, as administrators, upon two notes, dated June 16, 1846, made by the appellant to their intestate, John Perry, in his life time. The appellant set up in his answer, by way of offset, a claim for the rents of a saw mill. He stated that in 1843, being indebted to John Perry in a large amount, and being the equitable owner of a valuable saw-mill, the legal title to which was in Perry, he leased the mill to Montgomery & Brickey, for four years, at an annual rent of 60,000 feet of good merchantable lumber, payable semi-annually, and assigned the lease to Perry in payment of his indebtedness to him; that the notes sued on were given on the day of their date, upon a general settlement of all accounts between John Perry and himself up to that time, ex-

cept the balance due upon the lease which was then unexpired; that in the settlement, Perry gave him credit for the amount of lumber he had actually received from Montgomery & Brickey, and at the same time, gave him written authority to collect, as his agent, what was due on the lease; that he caused suit to be brought in his own name to the use of Perry, against Montgomery & Brickey, but before judgment was obtained, Perry died, and his administrators dismissed the suit and prevented the collection of the rent; that the amount due on the lease, without interest, was $1568 04; that from the time of the assignment, Perry took entire control of the rent and would not permit him to control it in any manner, except under his directions. The appellant, by calculating interest upon the uncollected instalments of rent, from the dates they respectively became due, claimed that the notes were paid and that Perry was in debt to him, $54 85, for which he asked judgment.

At the October term, 1851, the appellant obtained an order upon the respondents for the production of the assignment of the lease referred to in his answer, on or before January 1, 1852. Edward Bredell, one of the respondents, answered to the rule that he was acting administrator of John Perry, and that all the papers belonging to the estate were in his possession; that he had carefully examined said papers again and again, and caused his clerk to do so, and that neither could find any such paper as that called for.

At the April term, 1852, the case was called for trial, and the plaintiffs announcing themselves ready, the defendant said he had no reason for a continuance if the plaintiffs had answered the rule upon them for the production of the assignment of the lease. The court decided that Mrs. Perry, administratrix, the other plaintiff, need not answer, to which opinion the defendant excepted. The defendant then presented an affidavit for a change of venue, stating that the court was prejudiced against him, and he could not have a fair and impartial trial, and that he had come to this opinion since the cause had been called. The court overruled the application, for the rea-

son that there had been no previous notice of its presentation. The defendant excepted and the trial proceeded.

During the trial, a rough draft of the power of attorney to collect rents, spoken of in the defendant's answer, was produced by plaintiffs' attorneys, the defendant being about to ask an order for its production. That paper had no signature nor date, and was in the following words:

"I, John Perry, of St. Louis, do hereby appoint William F. Roberts my agent to collect the balance of the rent due for the saw-mill on Bates' creek, and what may accrue between now and March 8th next, from Preston Brickey and James Montgomery, when the lease of said Montgomery & Brickey will expire, and the said rents, when collected and paid over to the said John Perry, are to be credited on the notes given by the said William F. Roberts to the said John Perry, of even date with this paper."

The defendant offered to read this rough draft to two of his witnesses, to enable them to judge whether it was in substance identical with one they had seen in his possession, purporting to be executed by Perry. There being no proof that the signature of Perry to the original was genuine, the court refused to allow its contents to be proved in this way, to which the defendant excepted. A clerk of John Perry stated that he found the rough draft among his papers after his death, and that it was in the handwriting of Roberts.

Defendant also proved that in April, 1849, he commenced a suit in his own name, to the use of John Perry, against Brickey and Montgomery, for the arrears of rent due on the lease, and that after the death of Perry, his administrators came into court, and refused to let the suit proceed in their names, or to be responsible for the costs. It was proved that John Perry was summoned as a witness in this suit, and at that time stated that it was a plan of Roberts to cheat him out of the mill. This last evidence was excepted to by the defendant. It was also proved that since April, 1849, at least, Brickey and Montgomery were insolvent. A clerk of John Perry stated

that the notes sued on were given on a settlement of accounts between the parties, extending back through many years, but the rents were not included in it, and he heard nothing said about them at the time. The court gave several instructions to the jury, one of which was, that if they believed the settlement of June 16, 1846, was a final settlement between the parties, they must find for the plaintiffs the amount of the notes with interest, deducting offsets arising since that date. There was a verdict for the plaintiffs and the defendant appealed.

*M. Frissell*, for appellant. The court erred, 1. In not compelling both parties to answer the rule for the production of the assignment of the lease. 2. In not granting a change of venue. 3. In not permitting the witnesses to examine the rough draft of the power of attorney, which came from the possession of the adverse party, to refresh their memories. 4. In admitting the declarations of John Perry when he was summoned as a witness.

*T. C. Johnson*, for respondents. The court below committed no error. Whatever errors may have been committed, the judgment on the whole case is for the right party and will not be reversed. As to the motion for change of venue, see R. C. 1845, tit. Venue, sec. 3.

GAMBLE, Judge, delivered the opinion of the court.

1. In this case, the answer of the defendant attempts to set up, as an offset against the two promissory notes upon which he was sued, an indebtedness which he alleges existed from Perry to him, at the time the notes were given. This indebtedness, he says, arose on account of rents of a mill which Perry had possession of, and the rents of which were applicable to the satisfaction of the indebtedness from defendant to Perry. The whole defence made is, that the rents which Perry should have received from the tenants of this mill were not taken into the general settlement, which the answer of the defendant states was made at the time of giving the note sued on. Yet the defendant, in his answer, states that Perry, on the same day of the settlement, gave him an authority, in writing, to collect

these rents, and that, under that authority, he instituted suit in his own name, for the use of Perry, to recover the rents, which suit the administrators of Perry subsequently refused to allow to be prosecuted for their benefit. The statement of the case shows that Perry was summoned as a witness in the suit, and when summoned, told the sheriff that the defendant was trying to cheat him out of the mill. This language of Perry was allowed to be given to the jury, and it is mentioned particularly in this place, because its admission, when objected to by defendant, is the only ground upon which the judgment is reversed.

2. The defendant's objection to proceeding to trial because Mrs. Perry, the administratrix, had not answered the order for the production of a paper, when the defendant, as appears by his answer, knew months before, that Bredell, the administrator, who had the possession of the intestate's papers, had answered, denying that there was such paper among those of the intestate, was properly overruled. When the defendant, probably offended by a correct decision made against him on his objection to proceeding with the trial, immediately moved for a change of venue, on the ground that the judge was prejudiced against him, giving no previous notice of such application, and when the jury was about to be sworn, the court properly refused to allow the change.

3. The attempt of the defendant to prove the contents of a paper, without proving the existence of an executed original, was correctly prevented by the court when the plaintiffs objected.

4. As the judgment will be reversed for the admission of Perry's statement, it is proper to state certain principles of law arising in the case, which may facilitate its final disposition. It being admitted that the notes were given upon a settlement between the parties, it is incumbent on the defendant to show that the claim he now sets up was not included in that settlement. In order that the settlement should be held to embrace the present demand of the defendant, it is not necessa-

ry that the demand should have been allowed by Perry as a credit to Roberts. If the item, as a charge against Perry, was discussed between the parties, or claimed by one and denied by the other, and they finally arranged the terms of the settlement between them, and one party executed his notes to the other for the balance found due, the settlement will be held to embrace the disputed item, unless it appears clearly that they agreed to waive it and leave the demand open. In the present case, in relation to this disputed item, it appears from the answer that, at the very day of the settlement, Perry gave Roberts authority to collect from the tenants the amount of the disputed item, and if the paper offered by Roberts had been in evidence, it would have shown that the parties had agreed that whatever was collected from the tenants should be credited on these notes. It was then considered by the parties, and they made an arrangement in relation to it. If Roberts caused a suit to be brought in his own name, for the use of Perry, to recover the rent, the claim he asserted in that suit was, that the legal interest in the debt or demand was in him (Roberts,) and if Perry's administrators refused to be liable for costs, by having the suit prosecuted for their benefit, he might have proceeded in it himself, as the record showed that he claimed to have the legal interest. The judgment is reversed, and the cause remanded for further proceedings.