I. N. HOLMAN ET AL., EXECUTORS OF LAZARUS HOLMAN, DECEASED, Appellants, v. I. C. BACCHUS, Respondent.

Kansas City Court of Appeals, February 8, 1887.

EVIDENCE—COMPETENCY OF—GENUINENESS OF SIGNATURE.—It is not competent to introduce testimony concerning the contents of a receipt, purporting to be signed by a party against whom it is set up as matter of defence, in the absence of evidence tending to show the genuineness of the signature to the receipt. Where the claim is that such receipt was lost, there must first be proof that such receipt was in fact given, and by the party alleged to have executed it.

APPEAL from Maries Circuit Court, HON. A. J. SEAY, Judge.

*Reversed and remanded.*

Statement of case by the court.

This is an action upon a promissory note, given in 1863, by one S. H Hawkins and the defendant, for the sum of $1,047.50, payable on or before December 9, 1869, to Lazarus Holman, the plaintiff's testator.

A credit of five hundred dollars is endorsed on the note as of March 1, 1870.

Lazarus Holman died in December, 1871. Hawkins died in January or February, 1872. This action was instituted in 1876, for the balance due on. the note. The only defence was that of payment, and that defence was based upon the theory that Hawkins had in his life-time paid the note in full.

To maintain his defence the defendant was permitted by the court to introduce in evidence the depositions of A. J. Hill, the administrator of Hawkins' estate, and of one Mahan, tending to show that the contents of a certain receipt, purporting to be signed by Lazarus Holman, found and seen by them among the papers of Hawkins, after his death, and since lost, constituted a receipt in full of the amount due on the note.

There was no evidence of the genuineness of the signature to the receipt. There was no evidence tending to show that Lazarus Holman executed the receipt, unless the deposition of one Harris was such evidence. That deposition, so far as it was admitted by the court, is as follows:

"I cannot say I was acquainted with Lazarus Holman, but have seen the gentleman. I knew him when I saw him by his telling me who he was. I saw him the first time in Maries county, Missouri. It is my recollection that it was in 1868 or 1869. The way I came to be

at Mr. Holman's house was I went to see him on business for Mr. S. H. Hawkins. I saw Mr. Holman again after this, in Greenfield, Dade county, Missouri, a year or two afterwards. I had another conversation with Mr. Holman then. I think he told me that he had started to Jasper county; when he got to Greenfield he learned that Mr. Hawkins lived near there. I went out with him to Mr. Hawkins' house. To the best of my recollection he told me that he had a settlement to make with him. I think he told me that Mr. Hawkins had written him that he was ready to settle. To the best of my recollection he said something concerning that he did not have the note with him. I didn't know what he meant. I left Mr. Holman at Mr. Hawkins', in Dade county. This was two or three years before Mr. Hawkins died. I am not positive about the time. I didn't know of Mr. Holman holding any other note against Mr. Hawkins. The above is my best recollection of the whole matter."

For the defendant, Mrs. Ann Eliza Jones, widow of said Hawkins, now married, also testified. Her testimony was as follows: "That the last time she saw Lazarus Holman at S. H. Hawkins' house was in Dade county, Missouri, two years before Hawkins died, and the year before Holman died; that he came there with her husband. That John R. Harris was there while Holman was there, but did not come there with him. That Holman came there with her husband and stayed a day and night, or may be a day and two nights."

This is a sufficient statement of the case for this report.

CREWS & BOOTH, for the appellants.

I. The admission in evidence of the testimony of Arthur J. Hill and William Mahan, touching the receipt found by them among the papers of S. H. Hawkins, without any proof of the execution of said receipt by Lazarus Holman, was error. Before a party can prove

the contents of a paper, he must prove the existence of an executed original. *Perry's Adm'r v. Roberts*, 17 Mo. 36.

II. The admission in evidence of parts of the testimony of John R. Harris, was error. Said testimony did not tend to sustain the respondents' plea of payment, and tended, by vague hints of other business transactions between the payee of the note and one of the payors, to mislead the jury. The evidence was improper, and as the trial was by jury, and no adequate or convincing ground for the verdict is to be found in any other evidence in the case, the judgment should, for this error, be reversed. *Moore v. Mountcastle*, 72 Mo. 605.

III. The refusal of the court to permit appellants, for the purpose of impeaching Hill, a witness for respondent, to directly, by a leading question, ask witness I. N. Holman, whether or not Hill had told him, in a certain conversation, that the note in suit had not been probated or allowed against the estate of S. H. Hawkins, for the reason that he, Hill, held a receipt against the note; respondent having put in evidence testimony of said Hill, that he, in such conversation, made such communication to said Holman. The question, under the circumstances, was proper. 1 Greenleaf on Evidence (12 Ed.) p. 476, sect. 435.

IV. The refusal of the court to permit appellants to prove the contents of a lost letter, purporting to be signed by S. H. Hawkins, addressed to appellant Holman, and received by him in due course of the mail, was error. The proof of the manner in which the letter came to appellant was sufficient to authorize proof of its contents. 1 Greenleaf on Evidence (12 Ed.) p. 662, sect. 577. The admission of Hawkins was evidence against respondent, who was a joint payor with him of the note sued on, and who made no defence save that the party making said admission had paid the note. *Henslee v. Cannefax*, 49 Mo. 295. The admissions of a party to the

record, or of one identified with him, are, as against such party, admissible in evidence. 1 Greenleaf on Evidence (12 Ed.) p. 201, sect. 171.

V. The court erred in *refusing* to give the *first* and sixth instructions asked by appellant. Slight evidence of the *existence* of a document is sufficient to let in *secondary* evidence of its *contents* if it be lost. 1 Greenl. on Evid. (12 Ed.) sect. 558. But after the loss has been established, the secondary evidence of the *contents* must be clear and direct, and its *execution* must be distinctly proved. *Ibid.* It was proper and necessary that the jury should be instructed as to the law applicable, in making up their verdict.

VI. The court erred in *giving* the *first* and *second* instructions asked by respondent. It admitted evidence relating to the presentation of the note sued on for allowance against the estate of S. H. Hawkins, and to proceedings upon such presentation, including, among other things, testimony to conversations between appellant Holman and the administrator of Hawkins' estate, concerning such proceedings. By the seventh instruction asked for appellants, the court told the jury that they must not take such testimony into consideration. Then by this first instruction it told the jury that in determining the issues in this case they should take into consideration all the facts and circumstances in evidence. Now, between these two instructions, how is it to be supposed that an ordinary jury would settle the question whether it should take into consideration all the evidence, or only part of it?

VII. The court erred in giving the second instruction asked by respondent. In that instruction the court told the jury that it was only necessary, to enable them to find a verdict for respondent, that they should be satisfied from the evidence in the case that the note had been paid. This was error for two reasons. (1) That it turned the jury absolutely loose, to act upon their own notions, both as to law and fact. (2) That in this

case there was no evidence sufficient to support a finding that the note was paid.

VIII. The refusal of the court to set aside the verdict of the jury and grant a new trial was error. It was error, not only because of the said errors in the admission and rejection of evidence, and in giving and refusing instructions, but also because there was no evidence of payment to support the verdict.

L. F. PARKER and SCAMMON & STEUBENRAUCH, for the respondent.

I. The court did not err in admitting the evidence of Hill and Mahan as to the receipt. Courts only require such evidence as the case is capable of. The evidence tends to show the making of the paper, the *contents* of which was proved and sworn to be *lost*. The fact of *execution* of an instrument can be proved *circumstantially* like any other matter. Greenl. on Evid., sect. 558 ; Wells on Circums. Evid. (2 Ed.) 210 ; 1 Greenl. on Evid., sect. 13 ; Burrell on Circums. Evid. (2 Ed.) sect. 4, p. 162.

II. It was for the trial court, in its discretion, to say whether a leading question ought to be put to a witness, and as this discretion does not appear to have been abused, this court ought not to disturb it.

III. The court rightly refused to permit appellants to prove contents of the lost letter purporting to be signed by Hawkins. There was no evidence that Hawkins wrote it. There was no such course of correspondence between persons named as would warrant any presumption of the genuineness of the letter. There was never, as far as appears from the evidence, any subsequent acknowledgment of this letter by Hawkins, either express or implied. 1 Greenl. on Evid., sect. 577. Even if the court erred in this regard the error was one of which appellants cannot complain. Hawkins' admissions did not bind respondent. Their liability on the note was simply *several and common*, not joint, hence

the admissions of one would not bind the other. Abbott's Trial Evidence, pp. 187, 188, sects. 4, 5, 6; *Dowdelot v. Rawlings*, 58 Mo. 75; *Little v. Ferguson*, 11 Mo. 598; *Pope v. Risley*, 23 Mo. 185; *Am. Iron Co. v. Evans*, 27 Mo. 552; *Flowers v. Helm*, 29 Mo. 324.

IV. The court rightly *refused* the instructions complained of by appellants. They were not warranted by the evidence.

V. The court *rightly gave* 'the instructions to respondent, which are also complained of. They properly inform the jury as to its duty, and no more. *Holloway v. Commonwealth*, 11 Bush, 344; *Stampofski v. Steffens*, 79 Ill. 303; Sacket on Instructions, 29, 30; *Winston v. Wales*, 13 Mo. 569; *State v. Anderson*, 19 Mo. 241; *State v. Upton*, 20 Mo. 397. It is true that the court told the jury to consider (in the instruction) all the facts and circumstances in evidence. This, however, was not a direction to disregard instruction number seven, whereby incompetent evidence was withdrawn from their consideration. All the instructions are to be taken together. The duty of the jury was to give due weight to them all and consider them as a whole, and the presumption is that they did so. The two instructions were not contradictory. Number one, of respondent's instructions, only applied to what was really evidence— after that named in number seven had been withdrawn. They were both plain and clear statements, not calculated, we think, to mislead, on even casual inspection, the ordinary mind. Instruction number two, given by the court at the instance of respondent, was correct. It told the jury that before they could find for respondent they should be satisfied from the evidence in the case that the note had been paid. Appellants object that this instruction turned the jury absolutely loose, to act upon their own notions, both as to the law and the facts. It told them nothing of the law except that their finding must be based upon the evidence in the case, and that it must be of such a character as satisfied them. Beyond

this point, unless a jury trial is to be a farce, they
should find according to their view of what the facts
showed.   Otherwise it is difficult to see how a jury trial
could be otherwise than a mere sham.   If the verdict is
to be their judgment, they must *exercise* it.

HALL, J.—The turning point in this case, and the
only one which we deem it necessary for us to pass
upon, is presented by the action of the trial court in per-
mitting the defendant to introduce testimony concern-
ing the contents of the receipt, purporting to be signed
by Lazarus Holman, in the absence of evidence tending
to show the genuineness of the signature to the receipt.
Was such action by the court correct?

It was not competent for the defendant to introduce
evidence as to the contents of a receipt, given by Lazarus
Holman, and afterwards lost, without proof that such
receipt was, in fact, given by said Holman.   The exist-
ence of the receipt, and the execution of it by Holman
were facts necessary to be established in order to make
competent, testimony touching the contents of the re-
ceipt.   *Perry's Adm'r v. Roberts*, 17 Mo. 36.   This is
admitted by the defendant.   But his contention is that
the testimony of Harris and of Mrs. Jones tended to
show that such receipt was executed by said Holman.
But to the correctness of this contention we cannot
agree.

It may be conceded that Holman saw Hawkins for
the last time on the occasion testified to by Harris and
Mrs. Jones ; that Holman went to Hawkins' house for
the purpose of collecting the balance due on the note,
which balance, Holman understood, Hawkins was ready
to pay ; and that Holman did not have the note with
him, and this is certainly all that the testimony of
Harris and Mrs. Jones tended to prove, and yet we can-
not see how such facts alone tended to prove even pay-
ment, much less the genuineness of the signature to the
receipt.   There was only one way, under the facts of this
case, in which to prove the genuineness of the signature

to the receipt, and that was by competent proof that the handwriting of the signature was that of Lazarus Holman. Had the receipt not been lost, and had it been offered in evidence, it would have been necessary for the defendant to have shown that the signature to the receipt was in the handwriting of Lazarus Holman. The loss of the receipt made no change in this respect; it was still necessary for the defendant to make such proof.

Judgment reversed and cause remanded. All concur.