Hope v. Blair.

HOPE v. BLAIR *et al.*, *Appellants.*

DIVISION TWO.

1. **Jurisdiction:** VOID JUDGMENT.  Where it appears from the entire record that the court had no jurisdiction over the person or subject-matter, the judgment is void, and will be so regarded in a collateral proceeding.

2. **Circuit Courts:** JURISDICTION.  The circuit courts of this state have all general common-law jurisdiction, which is not conferred upon another court or tribunal.

3. ——— : ——— : RIGHTS OF MARRIED WOMEN.  They have jurisdiction to hear and determine all questions which affect the rights and liabilities of married women with respect to charging their separate estate with their contracts.

4. ——— : ——— : ———.  Their decrees in such cases, where jurisdiction of the parties has been acquired, are not collaterally assailable, whether error was committed as to the law or the facts.

5. **Court:** JURISDICTION.  A court is deemed to have jurisdiction of the subject-matter of a suit when it has the right to proceed to determine the controversy or question at issue between the parties, or to grant the relief prayed.

6. **Judgment Lien, Sale Under:** UNRECORDED DEED: EQUITIES.  Prior to a sale under a judgment, or attachment, the lien acquired thereunder is subject to all prior unrecorded deeds and equities existing against the land.

7.    ——— : ——— : LIS PENDENS NOTICE.   A *lis pendens* notice recorded after attachment, but before sale thereunder, will impart notice to the purchaser.

8.    ——— : INTEREST OF DEBTOR.   The lien of a judgment or attachment does not exceed the actual interest the debtor had in the land at the time of the rendition of the judgment or levy of the attachment.

9.    **Quitclaim Deed:** PRIOR UNRECORDED INSTRUMENTS.   A purchaser of land for value by a quitclaim deed will acquire the title as against a prior unrecorded deed, and as against every written instrument which may be recorded, and affecting in law or equity the property conveyed.

10.   ——— : PRIOR EQUITIES.   Land in the hands of a purchaser by such quitclaim deed remains subject to all equities arising out of transactions not required to be in writing, or which, if in writing, are not required to be recorded.

11.   **Evidence:** COPY OF DEED : ESTOPPEL.   While it is necessary to account for the non-production of the original deed to render a recorded copy admissible in evidence, still a party cannot complain of error in that respect if he also claims under the same deed.

12.   **Ejectment:** DAMAGES.   In ejectment under a claim in the petition of damages "to the amount of $100, and accruing monthly rents and profits at $10," the sum recoverable is not limited to the $100 ; the rents and profits from the commencement of the suit to the trial, added to the damages which accrued prior to the institution of the suit, would constitute the damages recoverable.

*Appeal from Shelby Circuit Court.*—HON.  T.  H. BACON, Judge.

AFFIRMED.

*W. O. L. Jewett* and *C. M. King* for appellants.

(1)  When the court has no jurisdiction of the subject-matter, the judgment or decree is void.   *Adams v. Cowles*, 95 Mo. 501; *Brown v. Woody*, 64 Mo. 547; *Bray v. Marshall*, 66 Mo. 123 ; *Cloud v. Inhabitants*, 86 Mo. 366.  (2)  The decree did not bind either Kennerly or Berolzheimer.   *Eddy v. Baldwin*, 23 Mo. 588 ; *Collins v. Warren*, 29 Mo. 236.  (3)  The instruction by the

court of its own motion is wrong, a deed lying outside the chain of title will impart no notice to the purchaser. *Tydings v. Pitcher*, 82 Mo. 379; *Speck v. Riggin*, 40 Mo. 405; *Campbell v. Co.*, 84 Mo. 352. (4) The court erred in allowing the record of the deed to be read as a copy of a lost deed. R. S. 1879, sec. 682; *Harding v. Lee*, 51 Mo. 241; *Coil v. Moore*, 51 Mo. 589. (5) Plaintiff must recover, if at all, by the strength of his own title. *Seimers v. Schrader*, 14 Mo. App. 346; *Foster v. Evans*, 51 Mo. 39; *Dunlap v. Henry*, 76 Mo. 106; *Farrar v. Heinrich*, 86 Mo. 521; *Hunt v. Railroad*, 75 Mo. 252. (6) The court ought to have given the instructions asked by defendant, declaring in substance that if the court sitting as a jury found from the evidence that Julia A. Wilson had only such an estate in the lot in controversy as that contained in the deed from Gunby to her, or of the record read in evidence of Hopkins to her, then she had no estate separate and apart from her husband, and the equity proceedings and deed under them were, therefore, void. Judgment can be attacked collaterally for fraud. *McClanahan v. West*, 100 Mo. 320; Bigelow on Estoppel [3 Ed.] 164. (7) The court ought to have set the verdict aside because the amount of damages found is greater than the amount asked. *Feedler v. Schroeder*, 59 Mo. 364; *Moore v. Dixon*, 50 Mo. 424.

*R. P. Giles* for respondent.

(1) The decree in the equity suit of Hope *v.* Wilson is regular, valid, and imports verity, there being nothing in the judgment roll to contradict the recitals in the decree. *Adams v. Cowles*, 95 Mo. 50; *Crow v. Myersieck*, 88 Mo. 411; *Burnett v. McCluey*, 92 Mo. 230. (2) In determining whether a deed vests a separate estate in a married woman or not, the court is not limited to a construction of the deed itself. *Klenke v. Koeltzer*, 75 Mo. 239; *Martin v. Colburn*, 88 Mo. 229; *Nicholson v. Flynn*, 24 Mo. App. 571. (3)

The court had jurisdiction of the subject-matter involved in the equity suit, and one of the questions submitted to the court to be determined was, whether or not Julia A. Wilson had a separate estate in the property, and the court found that she had a separate estate and made a decree subjecting it to the payment of the debt and its findings are conclusive, and cannot be attacked in this suit. *Rosenheim v. Hartsock*, 90 Mo. 357; *Coal Co. v. Bingham*, 97 Mo. 196. (4) All presumptions are in favor of the judgment, and nothing shall be intended to be out of the court's jurisdiction, except that which specially appears to be so. *Adams v. Cowles*, 95 Mo. 501; *McClanahan v. West*, 100 Mo. 309. No irregularity or error in the form of the decree will affect its validity. *Rosenheim v. Hartsock*, 90 Mo. 357. (5) The equitable notice of the endency of the suit of Hope *v.* Wilson seeking to affect the separate estate of Julia A. Wilson with the lien imported notice from the time of filing. *Rosenheim v. Hartsock*, 90 Mo. 357. (6) The court committed no error in refusing appellants' instruction, and the declaration of law given by the court of its own motion is amply supported by the authorities. It is a maxim in equity that he who takes with notice of an equity takes subject to that equity. Notice in this connection does not mean positive information, brought directly home to the party to be charged with it, but any fact, that would put an ordinarily prudent man upon inquiry, is notice. *Major v. Bukley*, 51 Mo. 227; *Meir v. Blum*, 80 Mo. 179; *Beattie v. Butler*, 21 Mo. 313; *Fellows v. Wise*, 55 Mo. 413; *Muldrow v. Robinson*, 58 Mo. 33; *Leavitt v. La Force*, 71 Mo. 353; *Mason v. Black*, 87 Mo. 329. (7) The finding of the court is amply supported by the evidence. The facts upon which the findings and judgment in this case are based are incontrovertible; the case being submitted to the court and a jury dispensed with, the facts are assumed to be as the court finds them, and this court will only

review the declarations of law. *Stewart v. Wood*, 63 Mo. 233; *Rice v. Dudley*, 34 Mo. App. 383; *Taylor v. Penquite*, 35 Mo. App. 389; *Warren & Son v. Malony*, 39 Mo. App. 295. (8) The appellant Berolzheimer was affected with notice of the deed from Hopkins and wife to Julia A. Wilson, dated December 25, 1884, and was bound to take notice of all liens shown to exist therein. A purchaser is bound to take notice of his vendor's title deeds, and all liens shown by them to exist. *Orrick v. Durham*, 79 Mo. 174; *Major v. Bukley*, 51 Mo. 227. (9) And it makes no difference that the deed from Hopkins to Julia A. Wilson, through which his vendor Kennerly derived title, was not of record; because he could not make out his title through Kennerly without that deed. *Johnson v. Gwathmey*, 4 Litt. (Ky.) 174; *Orrick v. Durham*, 79 Mo. 174; *Poage v. Railroad*, 24 Mo. App. 199. (10) Samuel Kennerly, from whom appellant Berolzheimer purchased, also had notice for the reasons above stated. The deed from Kennerly to Berolzheimer made on the day of the latter's purchase under the attachment proceedings was a quitclaim deed, and will not support the claim of being an innocent purchaser. *Ridgeway v. Holliday*, 59 Mo. 444; *Stoffel v. Schroeder*, 62 Mo. 147; *Stivers v. Horne*, 62 Mo. 473; *Maine v. Best*, 62 Mo. 491; *Sharp v. Cheatham*, 88 Mo. 498. (11) The demurrer to the evidence was properly overruled. There is nothing in appellants' contention that respondent offered no evidence showing that Julia A. Wilson, through whom he claimed, ever had title. It was not necessary. The respondent had offered evidence to show that Julia A. Wilson was the common grantor. *Charles v. Patch*, 87 Mo. 450; *Smith v. Lindsey*, 89 Mo. 76. (12) Neither is there anything in the appellants' contention, that the finding is for a larger amount than the damage claimed in the petition. The petition contained, besides the prayer for $100, a prayer for proper relief, and under this the court was authorized to render judgment for

the mesne profit, which was done. (13) When the judgment is for the right party, it will be affirmed. *Conley v. Doyle*, 50 Mo. 234; *Dunn v. Ruly*, 58 Mo. 134; *Hendecker v. Ganzhorn*, 50 Mo. 154; *Jackson v. Magruder*, 51 Mo. 55.

MACFARLANE, J.—Ejectment to recover possession of the east half of lot 9 in Taylor and Towson's addition to Shelbina. Answer, general denial.

It was admitted on the trial that Julia A. Wilson, wife of Newton Wilson, was the common source of title, and that defendant was, at the commencement of the suit, and at the trial, in the possession of the property.

Plaintiff offered in evidence the records and proceedings of the circuit court of Shelby county, in a suit by plaintiff herein as guardian of some minor children against Julia A. Wilson and her husband, commenced on the fourth day of February, 1885. This record shows that on the seventeenth day of August, 1883, Julia A. Wilson was the owner of the land as her separate estate in equity, and on said day she executed and delivered to plaintiff as guardian her note for $500 intending to charge, and thereby charging, said land for the payment thereof. Personal service was had on defendant Julia A. and notice by publication on her husband. Notice of *lis pendens* was filed on the day the suit was commenced, and was duly recorded. The court found the facts to be as charged in the petition, and a decree was entered accordingly. Under a sale on execution upon this decree plaintiff purchased the land, and claims title under the sheriff's deed which was read in evidence. Plaintiff offered evidence of damages, rents and profits, and rested.

Defendant then read in evidence a deed from Newton Wilson and wife, conveying the lot in controversy to John T. Hopkins, dated August 28, 1884, filed August 28, 1884. Also note and all the papers in an

attachment suit brought January 7, 1885, by defendant Berolzheimer against John T. Hopkins, in which the lot in controversy was attached, judgment obtained, and sale of lot under same. Sheriff's deed also read conveying lot to Berolzheimer; sale under this attachment, regular; deed, dated April 7, 1886. Defendant next read the record of a deed from S. C. Gunby and wife to Julia A. Wilson, dated July 27, 1883, and filed August 20, 1883. This is a warranty deed in usual form, conveying simply a legal title, with no statement in reference to a separate estate.

Then defendant read a deed from Julia Wilson and husband to Samuel Kennerly, dated January 3, 1885; filed April 9, 1885. This was a quitclaim deed, and contained the following recital:

"It is hereby understood by and between the parties hereto that this deed is made subject to a certain deed of trust in favor of George Hope, given by Julia A. Wilson in August, 1883, to secure the payment of $500."

Then defendant read deed from Samuel Kennerly and wife to Berolzheimer, dated April 7, 1886; filed April 12, 1886.

In rebuttal plaintiff offered to read the record of a deed from J. T. Hopkins and wife to Julia A. Wilson dated December 25, 1884, and filed the same day. This record was objected to as evidence for the reason that the deed did not appear to have been acknowledged. To prove the execution of the deed plaintiff called L. A. Hayward who testified that he was deputy recorder and knew the handwriting of J. T. Hopkins. When asked if he knew of the filing of a deed by him on December 25, 1884, from him and wife to Julia A. Wilson he answered: "I think the deed came by mail. I recorded the deed. My recollection is, it was his handwriting and signed by him, that he had made search for the original deed and could not find it; might have sent it to Shelbina to a man named Jordon.

In my judgment, this is the deed.   Signature to deed my recollection is was 'Hopkins.' "

Upon this proof the court permitted the record to be read as a copy of a lost deed.   This deed contained the same recital as the deed to Kennerly.   Plaintiff proved that at the date of the note August 19, 1883, Julia A. Wilson was in possession of the property.

I.   Defendant contends that the only title to the lot shown to have been held by Julia A. Wilson at the time the note sued upon was executed by her was a simple legal estate, which could not be charged for debts contracted by her, and for that reason the note was void, and the court never had jurisdiction over the subject-matter of the suit, and the decree, sale and deed were all void, and no title to the lot passed to plaintiff thereunder.

There can be no doubt that, when it appears from the whole record that the court had no jurisdiction over the person or subject-matter, the judgment is void, and will be so treated in a collateral proceeding.   *Adams v. Cowles*, 95 Mo. 507; *Brown v. Woody*, 64 Mo. 548; *Higgins v. Peltzor*, 49 Mo. 155.   It is not contended in this case that the court had no jurisdiction of the person of Mrs. Wilson or her husband.   The record shows that the former was personally served and the latter was notified by publication.   The inquiry is, therefore, narrowed down to the question, whether the court had jurisdiction of the subject-matter of the suit and to decree a sale of the property.

The circuit courts of this state have all general common-law jurisdiction which is not conferred upon another court or tribunal.   It has, therefore, jurisdiction to hear and determine all questions which affect the rights and liabilities of married women with respect to charging their separate estate upon their contracts. The general equity jurisdiction in such suits is not questioned, but the contention is that the court had no jurisdiction of the subject-matter of this particular suit

for the reason, as stated, that the estate which the decree attempted to charge was not the separate estate in equity of the married woman.

The subject-matter of a suit, when reference is made to questions of jurisdiction, is defined to mean "the nature of the cause of action and of the relief sought." *Cooper v. Reynolds*, 10 Wall. 316. "Jurisdiction may be defined to be the right to adjudicate concerning the subject-matter in a given case. To constitute this there are three essentials: *First.* The court must have cognizance of the class of cases to which the one adjudged belongs. *Second.* The proper parties must be present, and, *third*, the point decided must be, in substance and effect, within the issue." *Munday v. Vail*, 34 N. J. Law, 422.

A court may be said to have jurisdiction of the subject-matter of a suit when it has the right to proceed to determine the controversy or question in issue between the parties, or grant the relief prayed. What the controversy or issue, in any case, is, can only be determined from the pleadings. When the court has cognizance of the controversy, as it appears from the pleadings, and has the parties before it, then the judgment or order, which is authorized by the pleadings, however erroneous, irregular or informal it may be, is valid until set aside or reversed upon appeal or writ of error. This doctrine is founded upon reason and the "soundest principles of public policy." "It is one," says the court of Virginia, "which has been adopted in the interest of the peace of society, and the permanent security of titles. If, after the rendition of a judgment by a court of competent jurisdiction, and after the period has elapsed when it becomes irreversible for error, another court may in another suit inquire into the irregularities or errors in such judgment, there would be no end to litigation and no fixed established rights." *Lancaster v. Wilson*, 27 Gratt. 624; see, also, *Adams v. Cowles*, 95 Mo. 506; *Rosenheim v. Hartsock*,

90 Mo. 365 ; *Morris v. Gentry*, 89 N. C. 248 ; *Porter v. Gile*, 47 Vt. 620 ; *Paul v. Smith*, 82 Ky. 451 ; 1 Black on Judg., sec. 245.

As is said in *Adams v. Cowles*, *supra*, "the question of jurisdiction must be tried by the whole record." An examination of this record shows that Mrs. Wilson held the land as her separate estate when she executed the note. Such was also the finding of the court. The decree was in accordance with the pleadings. The court unquestionably had jurisdiction of the subject-matter. Inquiry cannot be made in this collateral proceeding whether the court committed error, either in law or fact ; the judgment is conclusive. There is not a suggestion found in the record that raises a suspicion that the property to be affected was other than the separate estate of Mrs. Wilson.

II. The next inquiry is, whether defendant was an innocent purchaser without notice of plaintiff's equitable right or charge upon this land. The notice of *lis pendens*, which was duly filed and recorded, gave constructive notice from the day of its filing, which was the day the suit was commenced. *Rosenheim v. Hartsock*, 90 Mo. 357.

On the question of notice, the court in substance declared the law to be that, if defendant Berolzheimer, prior to his purchase under the attachment proceedings and the deed from Kennerly, both dated April 7, 1886, had notice of the deed from Hopkins to Mrs. Wilson, then he was a purchaser with notice of plaintiff's equity, and the title acquired was subject thereto. The court found that defendant had such notice of the prior deed from Hopkins to Mrs. Wilson. The correctness of the instruction depends upon whether the rights defendant acquired under the attachment deed, and the deed from Kennerly, dates from the levy of the attachment, and the date of the deed from Mrs. Wilson to Kennerly, or from the date of the sheriff's deed under the attachment and the deed from Kennerly to himself, viz.,

April 7, 1886 ; if the latter, then the instruction is correct.

There is no doubt the instruction correctly declared the law as applied to the sale under the attachment proceedings. Until a sale has been made under a judgment or attachment the lien acquired under them is subject to all prior unrecorded deeds and equities existing against the land. *Maupin v. Emmons*, 47 Mo. 305; *Black v. Long*, 60 Mo. 182; *Martin v. Nixon*, 92 Mo. 30.

The principle established by these cases, and many others in this state, and upon which they rest, is, that the lien of a judgment or attachment does not exceed the actual interest the debtor had in the land at the time of the rendition of the judgment or levy of the attachment. *Davis v. Ownsby*, 14 Mo. 171. The recorded notice of *lis pendens* was constructive notice to defendant of the equitable claim on the land, and his purchase was subject thereto.

III. Whether the instruction correctly applied the law to the purchase of Kennerly is more in doubt, but we are of the opinion it does. A purchaser by quitclaim deed for value will acquire the title, as against a prior unrecorded deed, and every instrument in writing, which may be recorded, whereby the real estate conveyed may be affected in law or equity. This rule results from the operation of sections 692 and 693 ( R. S. 1879 ) of the registry act which invalidates the prior deed if not recorded. *Munson v. Ensor*, 94 Mo. 506, and authorities cited.

Equities which arise from transactions or a state of facts which may not be required to be in writing, or recorded, if in writing, are not to be cut off by a quitclaim deed. As to them it only has an operation, coextensive with its terms, of releasing such rights and interests as the grantor has at the time of the conveyance. The land in the hands of the purchaser remains subject to such equities. *Ridgeway v. Holliday*, 59

Mo. 444 ; *Munson v. Ensor*, 94 Mo. 506 ; *Mann v. Best*, 62 Mo. 497 ; *Stoffel v. Shroeder*, 62 Mo. 147.  Kennerly then took his title from Mrs. Wilson, subject to plaintiff's equities.  The instruction was correct, and the finding that defendant had notice when he purchased was authorized by the evidence.

IV.  It was objected that a proper foundation was not laid for the introduction in evidence of the copy of the deed from Hopkins to Mrs. Wilson.  Sufficient proof was made of an executed original and that the record read was a true copy ; but before the copy was admissible it was necessary to account for the non-production of the original.  *Hardin v. Lee*, 51 Mo. 241 ; *Attwell v. Lynch*, 39 Mo. 519 ; *Perry v. Roberts*, 17 Mo. 36.

Loss of the original deed was not sufficiently proved to authorize the reading of the copy, but we do not think defendant can now avail himself of the omission. Defendant offered, and read in support of his own title, the deed from Mrs. Wilson to Kennerly, and from Kennerly to himself.  Under this chain of title he claimed the right of possession, not only in the circuit court, but again in his brief and argument here.  This we think a sufficient recognition and acceptance of the ruling of the court to estop him to deny that the deed was properly in evidence before the court.  This deed was necessary to complete the title asserted through the conveyance from Kennerly, and defendant cannot claim title under it and deny it at the same time.  *Brown v. Bowen*, 90 Mo. 190 ; Bigelow on Estoppel, chap. 26, page 717 ; *Orrick v. Durham*, 79 Mo. 178.

V.  It is also urged that the damages assessed are in excess of the amount claimed in the petition.  Plaintiff claimed in his petition damages to the amount of $100 and accruing monthly rents and profits at $10. The judgment for damages was $160.  The suit was commenced in September, 1886, and the judgment was rendered in October, 1888.  The evidence tended to

prove the monthly value of the rents to be from $7 to $9. The statute ( sec. 4638 ) allows a recovery, " by way of damages, the rents and profits down to the time of assessing the same." It was sufficient under the statute to state, in the petition, the value of the rents and profits.

Under such statement the rents and profits should be assessed from the commencement of the suit to the trial, and the amount found would be a part of the damages claimed in the petition. This amount added to the damage which accrued prior to the institution of the suit would constitute the whole damages "claimed in the petition." *Road Co. v. Renfro*, 58 Mo. 266.

No error being found that could affect the merits of the case, the judgment is affirmed. All concur.