**PLACER COAL, INCORPORATED, Appellant,**

v.

**RHONDALE COAL SERVICES COMPANY, INC.; Ed Ratcliff & Floyd Sexton, a partnership, d/b/a Dennis Dean Coal Company; and Prichard Energy, Inc., Appellees.**

Court of Appeals of Kentucky.

Nov. 9, 1984.

Rehearing Denied Jan. 25, 1985.

Kenneth Williams, Jr., Ashland, Jerry Vincent, Catlettsburg, for appellant.

W. Jeffery Scott, Richard W. Martin, Ashland, for appellees.

Before CLAYTON, GUDGEL and Mc-DONALD, JJ.

CLAYTON, Judge.

Placer Coal, Incorporated (Placer) appeals from a judgment of the Boyd Circuit Court awarding Dennis Dean Coal Company (Dennis Dean) $31,310.02 and Prichard Energy, Inc. (Prichard) $19,177.41 as damages for coal wrongfully attached.

The major issue on appeal is whether the trial court erred in finding that title to the coal attached had reverted to Dennis Dean and Prichard prior to the time of attachment. Placer contends it did not and argues that the appellees' failure to retake possession of the coal within ten days of its delivery to Placer, as provided under KRS 355.2–702, prevented them from regaining title. Dennis Dean and Prichard counter with KRS 355.2–401(4), arguing that the buyer of the coal, Rhondale Coal Services Company, Inc., elected not to retain the coal under KRS 355.2–401(4) by its refusal to make payment and its release of its interest in the coal. Such a refusal to retain the coal would by operation of law automatically revest title in Dennis Dean and Prichard as sellers so that Placer's attachment to secure the debts of Rhondale Coal Services would be wrongful. After a thorough review of the parties' arguments and authorities, we conclude that title did indeed return to the sellers prior to the time of attachment so as to render the attachment wrongful.

Placer operates a coal processing plant, commonly referred to as a "tipple," on the

Big Sandy River in Boyd County, Kentucky. In August of 1981, Rhondale Coal Services Company, Inc. (Rhondale) entered into a contract with Placer whereby Rhondale, as coal buyer, would deliver coal purchased from local coal suppliers such as Dennis Dean and Prichard to the loading dock at Placer to be processed and loaded onto barges of the coal purchasers Rhondale located. In exchange for its services, Placer was to receive $2.00 per ton. During the month of August, 12,272.3 tons of coal were delivered to Placer's dock on the Big Sandy pursuant to the terms of this contract. From September 1 through September 15 of that year, another 1,865.14 tons of coal was processed by Placer pursuant to Rhondale's request. As a result of Placer's loading and processing of this coal, Rhondale was indebted to Placer in the amount of $24,544.60 for the August shipments and $3,731.30 for the September shipments.

Placer was not, however, Rhondale's only creditor at this time. Dennis Dean, a coal producer company organized as a partnership operating in Grayson, Kentucky, was owed $31,310.02. From August 24, 1981, through September 3, 1981, Dennis Dean delivered to Rhondale on credit forty-one loads of coal F.O.B. at the coal loading facility of Placer on the Big Sandy River for a stated delivery price of $24.50 per ton. Shortly after delivery Roger Griffith, president of Rhondale, telephoned Ed Ratcliff, a partner in Dennis Dean, and informed him that due to nonpayment from one of Rhondale's customers, Rhondale would be unable to pay Dennis Dean the $31,310.02 owed it for the forty-one truck loads. Griffith further advised Ratcliff that Rhondale was releasing its interest in the coal and that Dennis Dean could take possession of the coal at the tipple. Though the parties' testimony regarding the exact date of this conversation is uncertain, it apparently took place within two weeks after September 3, the last delivery date for the Dennis Dean coal. Immediately after his conversation with Griffith, Ratcliff visited Leonard Womble, mine manager for Placer, at Placer's loading dock.

During their meeting at the dock, Ratcliff told Womble of Rhondale's release and requested permission to remove the coal after offering to pay Placer's tippling fee. Womble refused to permit the removal of the coal.

During this same time period, Prichard, a Kentucky corporation engaged in mining and stripping coal, delivered 804.47 tons of coal in the name of Rhondale to Placer's dock. Rhondale was to have paid Prichard $23.75 per ton on September 11, 1981. On September 12, Herb Prichard, part owner and an officer of Prichard Energy, was advised that Rhondale would be unable to pay for the 807.47 tons it had purchased on credit. A meeting between Herb Prichard and Roger Griffith was then held at a local restaurant on September 14. At that time Griffith released any interest Rhondale claimed in the coal and told Prichard to take it back if he wanted it. Two days later, on the 16th, Prichard went to the loading dock and spoke with Keith Pettit, Placer's dock manager, about securing the return of the coal and paying the processing fee Rhondale owed Placer. Pettit informed him that a written release from Rhondale would be necessary before he could permit Prichard to take the coal. From the 16th through the 24th, Prichard unsuccessfully attempted to contact Womble by phone. On September 24, Prichard returned to the dock with a written release but was told that the coal was "tied up in court." A writ of attachment had been issued earlier that day.

In Ashland, Kentucky, on September 18, 1981, a meeting between Griffith and Womble took place at the law offices of Van Antwerp, Hughes, Monge & Jones. Present at that meeting were Carl D. Edwards, Jr. and Greg Monge, local attorneys previously involved at different times in representing the interests of Rhondale, Dennis Dean and Placer. At the meeting Womble requested that Griffith assign Rhondale's interest in the coal in order that Placer might attempt to sell it and thus recoup its losses. As Roger Griffith recalls their conversation, he informed Wom-

ble that assignment was not possible as he had released his interest in the coal back to Prichard and Dennis Dean. As Womble recalls the discussion, Griffith refused to assign his company's interest in the coal, but made no mention of the releases. Womble steadfastly denies any knowledge of the dealings of Rhondale and its sellers throughout this entire time period prior to issuance of the order of attachment on September 24, 1981. While he admits being contacted by Ratcliff concerning the release to Dennis Dean, he apparently did not consider himself thereby put on notice of such a release, nor obligated to inquire about it, absent direct contact from Rhondale.

On September 23, 1981, Placer filed a complaint against Rhondale in Boyd Circuit Court requesting judgment for $24,544.60 and a prejudgment attachment of the approximately 1,600 tons of coal in Placer's possession. Later, on September 28, Dennis Dean filed its intervening complaint seeking damages of $31,310.02 against either Rhondale or Placer and in the alternative return of the coal in Placer's possession.

Finally, Prichard Energy intervened on October 8 demanding damages of $20,994.22 from either Rhondale or Placer. Trial was subsequently held on January 6, 1983, the court stating that the only issue to be tried was the ownership of the coal. At the time of trial, a full and final compromise and release was filed in open court by which Placer Coal released all claims for loading fees against Rhondale in exchange for $12,500, and release of all Rhondale's claims to the coal stockpiled at the Placer dock. This compromise and release was immediately challenged by Placer's counsel who moved that it be set aside. At the time the above-mentioned judgment was entered, no ruling on that motion had been rendered. However, on March 17, 1983, the trial court entered an order overruling the motion to set aside the compromise and release and further ordering that its order was to have no effect on the other parties to the action, Dennis Dean and Prichard.

Placer has asserted numerous factual and legal errors in the trial court's judgment, all of which are argued to necessitate reversal of the judgment or, at the very least, retrial. The critical finding upon which this dispute hinges, however, is, in our view, the lower court's determination that the intervening coal producers, Dennis Dean and Prichard, were owners of the coal in Placer's possession at the time of attachment.

 Under KRS 425.301, a plaintiff may, under certain enumerated conditions, have an attachment "against the *property of the defendant*" at or after the commencement of an action. KRS 425.301 (our emphasis). In its essence, an attachment as set forth in KRS 425.301 is

"a remedy for the collection of an ordinary debt, proceeding by a seizure under legal process, termed 'a writ or warrant of attachment,' *of the property of the debtor.* It is tantamount to an involuntary dispossession of the property of the defendant prior to any adjudication of the rights of the plaintiff—an execution so to speak, in advance of trial and judgment"

. . . .

an attachment, being an ancillary proceeding, "can have no independent existence apart from a suit on a claim of the plaintiff against the defendant" . . . .

*Union Bank & Trust Co. v. Edwards,* 281 Ky. 693, 137 S.W.2d 344 (1940) (our emphasis). Thus, it is fundamental to the creation of a lawful attachment that the property seized be that of the defendant debtor. Put in other terms, "it has been recognized that an attachment suit is wrongful if the defendant is not indebted to the plaintiff." *City Lumber Co. v. Barrett,* Ky., 327 S.W.2d 402, 404 (1959). Thus, if the coal stored at Placer was owned by Dennis Dean and Prichard at the time of attachment, attachment would be wrongful as neither of the two coal producers was ever indebted to Placer.

In attempting to argue that ownership remained with Rhondale throughout the ac-

tion, Placer relies upon the language of KRS 355.2–702(2) providing that

> Where the seller discovers that the buyer has received goods on credit while insolvent he may reclaim the goods upon demand made within ten days after the receipt, but if misrepresentation of solvency has been made to the particular seller in writing within three months before delivery the ten day limitation does not apply. Except as provided in this subsection the seller may not base a right to reclaim goods on the buyer's fraudulent or innocent misrepresentation of solvency or of intent to pay.

In accordance with the language of the statute, there is little doubt but that Rhondale did receive the coal on credit from Dennis Dean and Prichard and did not have sufficient funds to make payment for it. The trial court's findings to the contrary notwithstanding, it is also as clear that neither of the producers made demand upon Placer to reclaim the goods within ten days of receipt as required. Therefore, as Placer contends, both producers forfeited their remedy of possession as against the buyer by their untimely failure to demand possession. However, as to determination of ownership of the coal for purposes of attachment, failure to comply with KRS 355.2–702(2) is immaterial. Ownership turns upon title, which is a concept little relied upon by the code, and is controlled not by KRS 355.2–702(2), but by KRS 355.-2–401. *See Meinhard-Commercial Corp. v. Hargo Woolen Mills*, 112 N.H. 500, 300 A.2d 321 (1972) (recognizing that section 2–401 plays a "catch basin" role where for the lack of any other legal tool the courts are required to fall back on the question of legal title).

According to the provisions of section two of that statute, title passes "at the time and place at which the seller completes his performance with reference to the physical delivery of the goods" unless otherwise explicitly agreed. KRS 355.2–401(2). Under the terms of the agreements between Rhondale and the appellee coal producers, the coal in question was to be delivered F.O.B. Placer's dock. Therefore, title to the coal vested in Rhondale at the moment it arrived at the dock. *See Nationwide Mutual Insurance Co. v. Hayes*, 276 N.C. 620, 174 S.E.2d 511 (1970) (title to goods passes from the seller to the buyer when goods are delivered to buyer). *See also In re Chemtoy Corp.*, 33 U.C.C.Rep. 1655, 19 B.R. 475 (Bankr.Ct.N.D.Ill.1982); *In re Bosson*, 432 F.Supp. 1013 (D.C.D. Conn.1977).

However, under section four of the same statute title may revest in the seller by operation of law upon "[a] rejection or other refusal by the buyer to receive or retain the goods, whether or not justified. . . ." KRS 355.2–401(4). Given the circumstances of the present appeal, we believe that Rhondale failed to retain the goods as provided within KRS 355.2–401(4). First, it should be noted that Rhondale is nothing more than a coal broker acting in this instance as a coal buyer. The corporation has no tangible assets for mining, loading, transporting, processing, or storing coal. Nor at the time this controversy arose, September of 1981, did Rhondale apparently have sufficient funds to make payment for further transportation of the coal located at the Placer dock. Thus, by its refusal to make payment to the producers, and release of all its interest in the coal to those same producers, Rhondale did everything within its power to refuse to retain the goods in Placer's possession. Title, therefore, revested in Prichard and Dennis Dean by operation of law well before issuance of the order of attachment on September 24.

Furthermore, Placer through its mine manager, Leonard Womble, and its dock supervisor, Keith Pettit, was put on notice of the question of Dennis Dean's and Prichard's revestiture of ownership by the actions of Ratcliff and Herb Prichard in contacting the two employees at the Placer dock in mid-September. That Womble refuses to accept his knowledge of the release by Ratcliff is immaterial as under KRS 355.1–201(25) a person has notice when he has actual knowledge of a fact or

has reason to know that a fact exists due to all the facts and circumstances known to him. Womble and his loading dock supervisor were directly informed of the releases by the producers involved, and thus Placer cannot be heard to deny notice of the releases simply because it had no contact with Prichard or Dennis Dean. The refusal of the trial court to permit Carl Edwards to testify is therefore immaterial and nonprejudicial, if indeed it was error, as Placer was already put on notice prior to the September 18 meeting. The lower court's finding as to ownership of the coal is therefore affirmed as is its determination that Placer wrongfully attached same.

■ Furthermore, although the parties have not extensively argued the issue, Placer's claim to the coal in its possession additionally fails due to its compromise and release of its claims against Rhondale. Attachment of a debtor's property may only be had in satisfaction of the debt. Upon the extinction of the debt the attachment is extinguished because, as noted above, attachment is an ancillary proceeding having no independent viability apart from a suit on the claim of the plaintiff against the defendant. Therefore, apart from considerations of the Uniform Commercial Code, when Placer surrendered its claim against Rhondale for processing and loading fees, it forfeited its right to attachment. However, given the fact that at the time of judgment no ruling had been issued as to the validity of the release, a ruling being rendered some several months later, we confine the basis of our holding as to liability to our interpretation of KRS 355.2–401(4).

■ However, as to the award of damages granted Prichard and Dennis Dean, we are forced to reverse and remand for retrial. By its award, the trial court appears simply to have granted the intervening producers the amount requested in their separate complaints. The sole evidence presented on the issue of damages includes testimony by Herb Prichard regarding his costs in mining and transporting the coal involved and Leonard Womble's mention of a per ton price possibly recoverable from a potential buyer approximately a year prior to trial. Neither of these figures is a proper measure of recovery. The proper measure of damages for wrongful attachment is the amount of depreciation in sale value of the attached goods during their wrongful possession. The amount of the award is calculated from the difference in the value of the coal on the date of attachment and its remaining value on the date of release of the attachment. At retrial on the issues of damages, the circuit court should therefore determine the amount and depreciation in value in the coal remaining at Placer based upon expert testimony.

The judgment of the Boyd Circuit Court is affirmed as to that portion determining the liability of Placer Coal, and reversed and remanded for retrial as to that portion awarding damages.

McDONALD, J., concurs.

GUDGEL, J., dissents.

GUDGEL, Judge, dissenting:

I respectfully dissent. In my opinion, KRS 355.2–401(4) does not apply to this case.

Title to the disputed coal passed to Rhondale upon delivery at Placer's dock. The majority concludes, however, that because Rhondale could not pay for the coal, and orally attempted to disclaim ownership of it, title to it revested in Prichard and Dennis Dean by operation of law pursuant to KRS 355.2–401(4). I cannot agree with this conclusion.

As I perceive the matter KRS 355.2–401(4) is applicable to cases where a buyer of goods has rejected delivery of them, or has made a proper revocation of acceptance, because they are deficient in some respect. The statute was not intended to

apply to cases where the buyer is merely unable to pay for the goods.

Here, Rhondale did not reject or revoke acceptance of the coal because it was deficient in any respect. It merely was unable to pay for the coal. Therefore, title to the coal never revested in Prichard and Dennis Dean by virtue of KRS 355.2–401(4). Thus, KRS 355.2–702(2) is the statute which governs the parties' rights. Because appellees failed to make demand for return of the coal within ten days after its delivery, their claim to title to the coal must fail.

Accordingly, I would reverse the court's judgment with directions that it enter a judgment in favor of Placer.